MICHAEL J. HADDAD (State Bar No. 189114)
JULIA SHERWIN (State Bar No. 189268)
MAYA SORENSEN (State Bar No. 250722)
TERESA ALLEN (State Bar No. 264865)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, California 94612
Telephone: (510) 452-5500
Facsimile: (510) 452-5510

SANJAY S. SCHMIDT (SBN 247475)
LAW OFFICE OF SANJAY S. SCHMIDT
1388 Sutter Street, Suite 810
San Francisco, CA 94109
Telephone: (415) 563-8583
Facsimile: (415) 223-9717

*Attorneys for Plaintiff*
*Jeremy Lapachet*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY LAPACHET,<br><br>             Plaintiff,<br><br>      vs.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, INC., TAYLOR FITHIAN, M.D., LANI ANTONIO, P.A., VERONICA BERGHORST, R.N., JESSAMAE TRINIDAD, R.N., GRASHIKA DEVENDRA, Psychiatric R.N., TABITHA KING, L.V.N., AMARDEEP TAWANA, L.V.N., JUDITH ALEJANDRE, L.V.N. COUNTY OF STANISLAUS, a municipal corporation, Stanislaus County Sheriff ADAM CHRISTIANSON, and DOES 1-50, Jointly and Severally,<br><br>             Defendants. | No: 1:17-cv-01226-DAD-EPG<br><br>Judge: Hon. Dale A. Drozd<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO COUNTY DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date:  December 19, 2017<br>Time: 9:30 a.m.<br>Place: Courtroom 5, 7th Floor |

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS.....................................................................................1

III.    LEGAL STANDARD .............................................................................................6

IV.     ARGUMENT ...........................................................................................................8

     A.      Plaintiff has Sufficiently Pled Claims Eighth Amendment Claims Against Sheriff
         Christianson Based on His Direct Knowledge and Involvement..............................8

     B.      Plaintiff has Sufficiently Pled Claims Against Stanislaus County and for
         Supervisory Liability Against Sheriff Christianson.................................................10

          1.      Claims against the County ............................................................10

          2.      Supervisory liability against Sheriff Christianson .......................16

     C.      Plaintiff has pleaded a plausible claim under California Civil Code § 52.1 (Bane
         Act) based on Defendants Antonio's, Berghorst, Trinidad's Devendra's, King's,
         Tawana's, and Alejandre's deliberate indifference to Mr. Lapachet's serious
         medical needs, and Defendant County and Sheriff Christianson are vicariously
         liable.........................................................................................................................19

     D.      Plaintiff's § 845.6/Negligence Claim is Well Pled.................................................24

     E.      Negligence ..............................................................................................................25

V.      CONCLUSION .....................................................................................................25

## TABLE OF AUTHORITIES

### Federal Cases

*A.E. ex rel. Hernandez v. Cnty. of Tulare*,
    666 F.3d 631 (9th Cir. 2012) .................................................................................10

*Atayde v. Napa State Hospital ("Atayde II")*,
    255 F.Supp.3d 978 (E.D. Cal. 2017).........................9, 10, 15, 16, 17, 20, 21, 22

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007)......................................................................................6, 7, 9

*Bennett v. Spear*,
    520 U.S. 154 (1997).........................................................................................18

*Blankenhorn v. City of Orange*,
    485 F.3d 463 (9th Cir. 2007) .......................................................................17, 22

*Cameron v. Craig*,
    713 F.3d 1012 (9th Cir. 2013) .........................................................................21

*Chaudhry v. City of Los Angeles*,
    751 F.3d 1096 (9th Cir. 2014) .........................................................................21

*Clouthier v. County of Contra Costa*,
    591 F.3d 1232 (9th Cir. 2010) ....................................................................11, 12

*Conn v. City of Reno*,
    591 F.3d 1081 (9th Cir. 2010) ...........................................................................8

*Cormier v. All Am. Asphalt*,
    458 F. App'x 620 (9th Cir. 2011) ......................................................................7

*D.V. v. City of Sunnyvale*,
    65 F. Supp. 3d 782 (N.D. Cal. 2014) ................................................................21

*Davis v. City of San Jose*,
    No. 14-CV-02035 BLF,
    2014 U.S. Dist. LEXIS 84641 (N.D. Cal. June 20, 2014) .................................21

*DiGiantomasso v. Tulare County*,
    No. 1:14-cv-01633-MCE-GSA,
    2015 U.S. Dist. LEXIS 70828 (E.D. Cal. June 1, 2015).....................................19

*Dillman v. Tuolumne County*,
    No. 1:13-CV-0040 LJO SKO,
    2013 U.S. Dist. LEXIS 65206 (E.D. Cal. May 7, 2013).....................................21

*Dorger v. City of Napa*,

No. 12-cv-440-YGR,
   2012 U.S. Dist. LEXIS 124551 (N.D. Cal. Aug. 31, 2012)................................11

*East v. City of Richmond*,
   No. C 10-2392 SBA,
   2010 U.S. Dist. LEXIS 117367 (N.D. Cal. Nov. 3, 2010)...........................11, 15

*Erickson v. Pardus*,
   551 U.S. 89 (2007).........................................................................................6

*Estate of Abdollahi v. Cnty. of Sacramento*,
   405 F. Supp. 2d 1194 (E.D. Cal. 2005)..........................................................25

*Frary v. County of Marin*,
   No. C 12-3928 MEJ,
   2012 U.S. Dist. LEXIS 177517 (N.D. Cal. Dec. 13, 2012) .............................17

*George v. Sonoma Cnty.*,
   No. C-08-02675,
   2008 U.S. Dist. LEXIS 103665 (N.D. Cal. 2008) .............................................17

*Gibson v. County of Washoe*,
   290 F.3d 1175 (9th Cir. 2002) ........................................................................12

*Gillette v. Delmore*,
   979 F.2d 1342 (9th Cir. 1992) ........................................................................16

*Hansen v. Black*,
   885 F.2d 642 (9th Cir. 1989) ..........................................................................18

*Hunter v. Cnty. of Sacramento*,
   652 F.3d 1225 (9th Cir. 2011) ........................................................................12

*IDC v. City of Vallejo*,
   No. 2:13-cv-1987 DAD,
   2014 U.S. Dist. LEXIS 78487 (E.D. Cal. June 6, 2014).........................11, 12, 14

*Jett v. Penner*,
   439 F.3d 1091 (9th Cir. 2006) ......................................................................8, 24

*Johnson v. City of Shelby*,
   574 U.S. ___ (2014), 135 S.Ct. 346................................................................7

*Johnson v. Duffy*,
   588 F.2d 740 (9th Cir. 1978) ..........................................................................18

*Johnson v. Shasta Cnty.*,
   83 F.Supp. 3d 918 (E.D. Cal. 2015).................................................................7

*Kodimer v. County of San Diego*,
   2010 U.S. Dist. LEXIS 65090 ...................................................................24

*Lacey v. Maricopa Cnty. (Arpaio)*,
   693 F.3d 896 (9th Cir. 2012) ....................................................................7

*Larez v. City of Los Angeles*,
   946 F.2d 630 (9th Cir. 1991) ...................................................................18

*Long v. Cnty. of Los Angeles*,
   442 F.3d 1178 (9th Cir. 2006) .................................................................15

*Lopez v. County of Tulare*,
   No. CV-F-11-1547-LJO-BAM,
   2012 U.S. Dist. LEXIS 1833 (E.D. Cal. Jan. 6, 2012).............................11

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ...................................................................7

*Los Angeles Police Protective League v. Gates*,
   907 F.2d 879 (9th Cir. 1990) ...................................................................17

*Lum v. Cnty. of San Joaquin*,
   756 F. Supp. 2d 1243 (E.D. Cal. 2010)....................................................25

*M.H. v. County of Alameda*,
   90 F. Supp. 3d 889 (N.D. Cal. 2013) ....................................11, 12, 14, 19, 20, 22

*M.S. et al. v. County of Ventura*, et al.,
   16-cv-03084-BRO (C.D. Cal. 2017)........................................................22

*Meehan v. County of Los Angeles*,
   856 F.2d 102 (9th Cir. 1988) ...................................................................16

*Mendia v. Garcia*,
   768 F.3d 1009 (9th Cir. 2014) .................................................................18

*Menotti v. City of Seattle*,
   409 F.3d 1113 (9th Cir. 2005) .................................................................18

*Minneci v. Pollard*,
   132 S. Ct. 617 (2012 ...............................................................................16

*Monell v. Dept. of Soc. Servs.*,
   436 U.S. 658 (1978)..................................................................................12

*Moore v. City of Vallejo*,
   73 F. Supp. 3d 1253 (E.D. Cal. 2014)......................................................10

*Moreno v. Town of Los Gatos*,

267 F. App'x. 665 (9th Cir. 2008) ..................................................................19

*Neuroth v. Mendocino County,*
    No. 15-cv-03226-NJV,
    2016 U.S. Dist. LEXIS 11109 (N.D. Cal. Jan. 28, 2016) ....................................10

*Page v. County of Madera,*
    No. 1:17-cv-00849-DAD (Doc. 30, Order dated Dec. 4, 2017), .........................20

*Perreault v. City of Westminster,*
    Case No. CV 12-2767-CAS (ANX),
    2013 U.S. Dist. LEXIS 31780 (C.D. Cal. Mar. 7, 2013) ....................................23

*Pollard v. GEO Group, Inc.,*
    607 F.3d 583 (9th Cir. 2010) ......................................................................16

*Preschooler II v. Clark County School Bd. of Trustees,*
    479 F.3d 1175 [(9th Cir. 2007) ....................................................................17

*Price v. Sery,*
    513 F.3d 962 (9th Cir. 2008) ......................................................................12

*Redman v. Cnty. of San Diego,*
    942 F.2d 1435 (9th Cir. 1991) .................................................................8, 18

*Rodriguez v. City of Modesto,*
    No. 1:10-CV-01370-LJO-MJS,
    2013 U.S. Dist. LEXIS 172958 (E.D. Cal. Dec. 9, 2013) ..................................21

*Sanchez v. City of Fresno,*
    No. 1:12-CV-00428-LJO-SKO,
    2013 U.S. Dist. LEXIS 68561 (E.D. Cal. May 14, 2013)...................................21

*Shelley v. Cnty. of San Joaquin,*
    954 F. Supp. 2d 999 (E.D. Cal. 2013)..........................................................10

*Skilstaf, Inc. v. CVS Caremark Corp.,*
    669 F.3d 1005 (9th Cir. 2012) ......................................................................6

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ......................................................................7

*Swierkiewicz v. Sorema, N.A.,*
    534 U.S. 506 (2002)................................................................................6, 7

*Tandel v. Cnty. of Sacramento,*
    No. 2:11-cv-00353-MCE-AC,
    2014 U.S. Dist. LEXIS 6513 (E.D. Cal. Jan. 17, 2014).....................................18

*Vasquez v. Los Angeles Cnty.*,
    487 F.3d 1246 (9th Cir. 2007) ................................................................. 6

*West v. Atkins*,
    487 U.S. 42 (1988) ................................................................................... 15

*Wise v. Nordell*,
    No. 12-CV-1209 IEG (BGS),
    2012 U.S. Dist. LEXIS 128656 (S.D. Cal. Sept. 10, 2012) ...................... 11

*WMX Techs, Inc. v. Miller*,
    104 F.3d 1133 (9th Cir. 1997) ................................................................. 24

*Young v. City of Visalia*,
    687 F. Supp. 2d 1141 (E.D. Cal. 2009) ................................................... 10

## Federal Statutes

42 U.S.C § 1983 ................................................................................... passim

## Federal Rules

Federal Rule of Civil Procedure 12(b)(6) .................................................. 6

Federal Rule of Civil Procedure 8(a)(2) .................................................... 6

## California Cases

*Becerra v. County of Santa Cruz*,
    68 Cal. App. 4th 1450 (1998) .................................................................. 23

*Bender v. Cty. of L.A.*,
    217 Cal. App. 4th 968 (2013). ................................................................ 19

*Castaneda v. Department of Corrections and Rehabilitation*,
    212 Cal. App. 4th 1051 (2013), .............................................................. 25

*Cornell v. City and County of San Francisco*,
    __Cal.App.4th__, 2017 Cal.App. LEXIS 1011, 2017 WL 5495096 (Cal. Ct. App. Nov. 16, 2017)
    .................................................................................................................. 20

*Johnson v. Cnty. of Los Angeles*,
    143 Cal. App. 3d 298 (1983) ................................................................... 24

*Jones v. Kmart Corp.*,
    17 Cal. 4th 329 (1998) ............................................................................ 19

*Lucas v. Cnty. of Los Angeles*,
    47 Cal. App. 4th 277 (1996) ................................................................... 24

*Perez v. City of Huntington Park,*
    7 Cal. App. 4th 817 (1992) ........................................................................23

*Shoyoye v. County of Los Angeles,*
    203 Cal. App. 4th 947 (2012) ...........................................................20, 21

*Simmons v. Superior Court of San Diego County,*
    7 Cal. App. 5th 1113 (2016) ...................................................................20

*Towery v. State of California,*
    14 Cal. App. 5th 226 (2017) ....................................................................23

*Venegas v. Cty. of L.A.,*
    32 Cal. 4th 820 (2004) ......................................................................19, 21

*Watson v. State of California,*
    21 Cal. App. 4th 836, 841 (1993 ..............................................................24

*Zeilman v. Cnty. of Kern,*
    168 Cal. App. 3d 1174 (1985) ...........................................................24, 25

## California Statutes

California Civil Code § 52.1 ..............................................................................19

California Government Code § 26605 .............................................................8

California Government Code § 26610 .............................................................8

California Government Code § 815.2 ...........................................................22

California Government Code § 845.6 ...........................................................24

California Penal Code § 4006 .........................................................................8

## Other Authorities

Ninth Circuit Model Civil Jury Instruction 9.3...........................................18

Ninth Circuit Model Jury Instruction No. 9.7.............................................15

## I.      INTRODUCTION

On December 9, 2014, Plaintiff Jeremy Lapachet, walked into the Stanislaus County Jail in Modesto, CA.  (Doc. 1, ¶ 25).  On October 26, 2015—as a result of Defendants' constitutionally violative acts and omissions— he left the jail a quadriplegic, having suffered severe spinal cord injuries, a torn rotator cuff, a skull fracture, subdural hematomas, and a traumatic brain injury.  *Id*.  Mr. Lapachet, 42 years old, will live out the rest of his days suffering the effects of these catastrophic injuries.

Mr. Lapachet brought this action under 42 U.S.C § 1983 for deprivation of his civil rights; for violations of the American Disabilities Act and the Rehabilitation Act of 1973; and for violations of his rights under California law.  Mr. Lapachet bases these claims on the deliberate indifference to his serious medical needs by both the California Forensic Medical Group (CFMG) Defendants and the Stanislaus County Defendants, as well as on the uses of excessive force by as-yet unidentified Stanislaus County Defendants.  On November 30, 2017, Plaintiff filed a stipulation signed by all parties to dismiss the ADA/RA claim.  (Doc. 53).

Defendants contend that Plaintiff pleaded "insufficient facts" to state plausible claims against Sheriff Christianson and the County, while continuing to conceal from Plaintiff all County records concerning Mr. Lapachet's incarceration and injury.  Their motion, however, fails to state the facts pleaded—among them, that all Defendants knew that Mr. Lapachet had injected an illicit substance that caused him to have elevated vital signs and engage in self-harming behavior, and led to bleeding in his nose and the upper right side of his head, yet with deliberate indifference failed to summon a higher level of care, and instead violently dragged Mr. Lapachet by his head and neck to a safety cell where they left him bloody and in need of medical attention.  Mr. Lapachet was later found lying prone with liquid pooled around his face and upper body.  Defendants waited around 47 minutes after discovering him in this state to call an ambulance.

Defendants have fair notice of Plaintiff's claims, plausibly pleaded in detail in the Complaint. Accordingly, this Court should deny the County's Motion To Dismiss.

## II.     STATEMENT OF FACTS

The following allegations are necessarily based on limited medical records provided by Defendant CFMG, because Defendant Stanislaus County has persistently refused to provide Plaintiff with any

County records of his incarceration.  (Doc. 1, ¶ 14).[1]

On December 9, 2014, Mr. Lapachet was booked into the Stanislaus County jail.  Defendant Sheriff Adam Christianson took custody of him; when he sustained his grievous injuries on October 26, 2015, Mr. Lapachet was housed at the Public Safety Center ("PSC").  (¶ 26).

At all material times, Stanislaus County contracted with CFMG, to provide medical, mental health, and nursing care to inmates in the County's jails.  (¶ 7).  Defendant CFMG has been widely criticized for its inadequate health care provided to California inmates.  (¶ 58).  Indeed, CFMG-serviced jails have a 50% higher rate of death by suicide or drug overdose than non-CFMG facilities.  (¶ 58).

On October 24, 2015, at or around 5:50 p.m., Mr. Lapachet was placed in the "Sobering Cell" because Defendants CFMG and County staff became aware that he had been injected with, and was under the influence of, an unknown controlled substance.  (¶ 27).  Defendants did not place Mr. Lapachet in a safety smock.  (¶ 27).  CFMG Defendant Jessamae Trinidad, R.N., learned that another inmate had injected Mr. Lapachet with an unknown substance in his right "AC" (presumably the acromioclavicular joint) and noted three red marks in his right AC, with bruising.  *Id*.  Mr. Lapachet reported that he had experience with the effects of various drugs when he was "on the outside" (not in custody), and that the substance he had been injected with did not feel like any he had ever ingested in the past.  *Id*.  Before Mr. Lapachet's Sobering-Cell placement, he had been observed engaging in self-harming, suicidal behaviors, including assaulting himself by punching himself multiple times.  (¶ 28).  Defendant County's jail staff reported this to Defendant CFMG's staff.  (¶ 28).

Over the next 24 hours, despite Mr. Lapachet's vital signs being repeatedly noted as grossly elevated, Defendants CFMG staff and County corrections officers did nothing more than monitor Mr. Lapachet – no medical care was provided or summoned for him.  (¶¶ 29-37).  At around midnight on October 24, County jail staff had moved Mr. Lapachet to a regular single cell, with a bunk bed and furniture by which he could injure himself, and without a safety smock, while calling such cell a "safety cell."  (¶ 32).  CFMG and COUNTY personnel knew and/or should have known Mr. Lapachet presented a serious danger to his own safety – in addition to being under the influence of an unknown substance – based on his observed self-harming behavior and paranoid statements.  (¶¶ 33-35).

---

[1] Further paragraph numbers refer to the Complaint (Doc. 1).

At 9:08 am, October 25, Doe Defendant County staff prevented a registered nurse from examining or treating Mr. Lapachet.  (¶ 36).  At about 4:00 pm, CFMG Defendant L.V.N. Tawana observed Mr. Lapachet standing in his cell with a towel tied tightly around his left wrist.  (¶ 37).  Noting that he "doesn't look right," Defendant Tawana requested County staff to let her check his vital signs; Defendant County staff refused.  *Id*.  At about 5:30 pm, Defendants CFMG's and County's staff were summoned for a "man down" because Mr. Lapachet was bleeding from his nose and the right upper side of his head.  (¶ 38).  Despite observing that bleeding, CFMG Defendant Tawana, L.V.N., failed to conduct an examination or summon medical care, noting that there were "no visible injuries." *Id*.  Instead of immediately summoning medical care and further evaluating Mr. Lapachet's condition, including his nose and head bleeding, or having him transported to the emergency room to be seen by trauma doctors, Defendant CFMG's and County's staff simply noted that, since he was currently being "monitored due to unknown substance abuse," they would "continue to monitor" him by attempting to check his vital signs every four or six hours.  *Id*.

Defendants CFMG's and County's staff knew that Mr. Lapachet had been placed in the Safety Cell because he had shown signs of suicide and depression and exhibited self-mutilating injuries on his body, and that he posed a risk to his own safety and was under the influence of an unknown substance. *Id*.  Nevertheless, Defendants did not order a toxicology screening test, and did not summon medical care or transfer him to the emergency room, nor did Defendants request or institute any increased supervision or treatment plan for him, all with deliberate indifference to his serious medical needs.  *Id*.

CFMG Defendant Tawana's deliberately indifferent acts and omissions directly resulted from Defendant County and CFMG's policy to staff jails with Licensed Vocational Nurses instead of Registered Nurses to increase Defendant CFMG's profit margins. (See Doc. 1, ¶¶ 38, 39, 42, 58).  Accordingly, the CFMG employees and Defendants who responded did not transfer Plaintiff to a hospital or call an ambulance, but conducted an on-site response.  (Doc. 1, ¶ 39).  On information and belief, the County's contract with Defendant CFMG created a financial incentive for CFMG to refrain from sending Mr. Lapachet and other inmates in need of inpatient hospitalization or other intensive care off-site for their needed care.  (Doc. 1, ¶ 39).

At about 5:55 pm on October 25, Defendant Tawana observed Mr. Lapachet in his cell, without a safety garment, with self-harming injuries, and he was actively wrapping a towel around his neck and

both hands.  (¶ 40).  Still, County and CFMG Defendants provided no care or intervention for Mr. Lapachet's safety.  *Id*.

Three minutes later, at 5:58 pm, Defendant Tawana "responded" with other medical staff, and **found Mr. Lapachet laying on the floor, bleeding "from an unknown place," and surrounded by County jail custody staff**.  (¶ 41).  Mr. Lapachet allegedly had used "filthy language."  *Id*.  **County jail correctional officers violently dragged Mr. Lapachet out of his cell by his head and neck**, in retaliation for using such language.  *Id.*  When County correctional officers had dragged Mr. Lapachet, he told them they were hurting him. *Id.*  CFMG personnel, including TAWANA, noted blood on Mr. Lapachet's mouth, his hands, and blood smeared on his forehead.  *Id.*  Despite his clear injuries, including both those that were visible and those that he had reported, COUNTY staff **dragged** Mr. Lapachet violently, by his head and neck, to a "Safety Cell," (on information and belief, merely a single cell).  *Id.* Despite the fact he had been apparently self-inflicting injuries too, CFMG Defendant TAWANA failed to provide a safety garment and did not request or institute any increased supervision or treatment plan for him, with deliberate indifference to his serious medical needs. The only action TAWANA apparently might have taken was to schedule a mental health "evaluation" to be conducted the **next morning**, but there is no indication that this ever even took place.  *Id.*

At 6:58 pm, 11:02 pm, and 11:24 pm, Defendants L.V.N. Tawana, R.N. Berghorst, (and presumably also County jailers at regular intervals) observed that **Mr. Lapachet had not moved and was still laying flat, with dried blood on his face.**  (¶¶ 42-44).  At about 12:40 am on October 26, a CFMG note states that Mr. Lapachet was "found laying" in the "prone position" and that, *per the County custody staff, the patient (Mr. Lapachet) had "not moved since he was placed in [the] safety cell."*  (¶ 45).  Mr. Lapachet was **found *laying prone with liquid pooled around his face and upper body***.  *Id.*  An obvious and plausible inference is that County Doe Defendants broke Mr. Lapachet's neck when they dragged him by his head and neck.  (¶¶ 41-45).

Defendant Berghorst arrived and noted that Mr. Lapachet was "not moving."  (¶ 47).  At about 12:59 a.m., American Medical Response's ambulance personnel arrived and were informed that Mr. Lapachet had been "brought over" to the observation cell after he had been found "hitting himself," which occurred after he had possibly ingested 2–3 dime bags of "dope."  (¶ 48).  AMR personnel were told that, during "rounds," the Defendant County's staff had found Mr. Lapachet lying face down in a pool of blood

and other bodily fluids.  *Id.*  Mr. Lapachet said he "hurt all over," but he had mumbled speech and was slow to respond.  *Id.*  At about 1:23 a.m., after having put Mr. Lapachet into full spine precautions, AMR personnel took him to the emergency room, arriving at about 1:39 a.m.  (Doc. 1, ¶ 49).

> At Doctors Medical Center, Mr. Lapachet was diagnosed as follows:
> a. He was unable to feel or move his legs: he had no purposeful movements or sensation in his lower extremities;
> b. Cervical Spine fracture at C5 with a variety of severe spinal cord injuries;
> c. Right-sided epidural hematoma with 3 mm midline shift;
> d. Subdural hematomas;
> e. Bilateral subdural hematoma;
> f. Nondepressed skull fracture;
> g. Right sphenoid wing fracture; fracture along coronal suture;
> h. Various fractures in the skull and surrounding areas, and epidural hematoma with mass effects of the adjacent brain and 3-mm midline shift;
> i. Displaced right frontotemporal skull fracture with associated epidural hematoma;
> j. Nondisplaced fracture along left side of coronal suture;
> k. Extra-axial hematoma along the left frontoparietal lobe;
> l. Left sided facial hematoma;
> m. The procedures his injuries required included, but were not limited to: right frontotemporal craniotomy and evacuation of right frontotemporal extradural hematoma and repair of simple cranial fracture;
>   i. Right frontotemporal craniotomy;
>   ii. Evacuation of epidural hematoma;
>   iii. Repair of right frontotemporal nondepressed skull fracture;
> n. Torn rotator cuff on his Right shoulder;
> o. In Summary:
>   i. Quadriplegia; traumatic cervical spinal cord injury;
>   ii. Skull fractures;
>   iii. Torn rotator cuff;
>   iv. Traumatic brain injury;
> p. Permanent Paralysis; Mr. Lapachet is now a Quadriplegic.

(Doc. 1, ¶ 52).

Despite the extensive, observed self-harming behavior, and intoxication with severe effects from some unknown drug, Defendant County and CFMG personnel did not place Plaintiff in an appropriate safety cell (without items with which to harm himself), or provide him with a safety smock, or necessary medical care before or after his neck was broken.  (see, ¶¶ 50-51, 59-62, 64-71).  Plaintiff alleges in ¶ 63 alternatively – and in plausible detail – that his injuries were caused either by (a) County and CFMG Defendants' deliberate indifference to his serious medical needs, including self-harming behavior, such that he was left in a regular cell without necessary care and permitted to harm himself, causing his spinal

injuries; or (b) County Defendants' violent, excessive, and malicious uses of force, including dragging him into a cell by his head and neck causing multiple injuries around his body, such as to his head, neck, shoulder, and a "boot mark" bruise on his buttock.  (¶ 63).

### III.   LEGAL STANDARD

Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A district court reviewing a complaint under Rule 12(b)(6) must "construe the complaint in a light most favorable to the non-moving party," *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007), and it "'must consider the complaint in its entirety[.]'"  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).

A complaint must satisfy the general notice pleading requirements of Federal Rule of Civil Procedure 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule. Civ. P. 8(a)(2).  This rule reflects a simplified and lenient pleading system that "was adopted to focus litigation on the merits of a claim" rather than on technicalities that could keep litigants out of court.  *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions").

In *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), the Court held that "a complaint attacked by a Fed. Rule Civ. Pro. 12(b)(6) motion to dismiss does not need detailed factual allegations."  The factual allegations must only "be enough to raise a right to relief above the speculative level."  *Id.* at 555 (citations omitted).  The *Twombly* Court stressed that it was not imposing a probability requirement on plaintiffs at the pleading stage.  *Id.* at 556.  Rather, the claims must be "plausible," which "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the allegations. *Id.* The Court explained: "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (quotations and citation omitted).

Two weeks after deciding *Twombly*, the Court issued *Erickson v. Pardus*, 551 U.S. 89 (2007), and put to rest any question that *Twombly* overruled Rule 8(a)'s general notice-pleading:

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

*Id.* at 93 (citing *Twombly,* 550 U.S. at 555)(internal quotations omitted).  *See also Cormier v. All Am. Asphalt*, 458 F. App'x 620, 620 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 569–70 ("*Swierkiewicz* is still good law after *Twombly* and *Iqbal*. This is supported by the language of *Twombly*, which rejected the argument that its analysis 'runs counter to *Swierkiewicz*.'").

When the allegations are capable of multiple inferences, the court must adopt whichever plausible inference supports Plaintiff and deny the motion to dismiss:

> If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).  Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*.  The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable.  The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'

*Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011) (emphasis in original).More recently, the *en banc* Ninth Circuit explained:  "*Iqbal* demands more of plaintiffs than bare notice pleading . . . but it does not require us to flyspeck complaints looking for any gap in the facts."  *Lacey v. Maricopa Cnty. (Arpaio)*, 693 F.3d 896, 924 (9th Cir. 2012) (*en banc*) (citation omitted).

The Supreme Court reaffirmed that a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability."  *Johnson v. City of Shelby*, 574 U.S. __ (2014), 135 S.Ct. 346, 347 (per curiam) (citations omitted).  *Johnson* also reaffirmed that plaintiffs in civil rights cases need only state "simply, concisely, and directly" the events that they allege entitle them to damages.  *Id.*  Where a plaintiff informs the municipality of the factual basis for the complaint, the plaintiff is "required to do no more to stave off threshold dismissal for want of an adequate statement of their claim."  *Id.*  Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Id.* at 346.

Pleading facts "'on information and belief' is "sufficient so long as the other *Iqbal-Twombly* requirements are satisfied."  *Johnson v. Shasta Cnty.*, 83 F.Supp. 3d 918, 926 (E.D. Cal. 2015) (citations omitted).  Unless amendment would be futile, leave to amend should be freely granted.  Fed. R. Civ. P. 15(a)(2); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.   ARGUMENT

### A. Plaintiff has Sufficiently Pled Claims Eighth Amendment Claims Against Sheriff Christianson Based on His Direct Knowledge and Involvement

Under California law "'[t]he sheriff is required by statute to take charge of and keep the county jail and the prisoners in it, and is answerable for the prisoner's safekeeping.'"  *Starr*, 652 F.3d at 1208 (quoting *Redman*, 942 F.2d at 1446 (citing Cal. Gov't Code §§ 26605, 26610; Cal. Penal Code § 4006))). Plaintiff alleges that Defendant Christianson was ultimately responsible for all policies, procedures, and training at the jails.  (Doc. 1, ¶5).  Defendant Christianson failed to "adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline" Defendants DOE Deputies and other CFMG personnel.  (¶ 98).  Plaintiff also alleges that all of Defendant Christianson's actions and omissions were a moving force and/or proximate cause of the deprivations of Jeremy Lapachet's constitutional rights free from deliberate indifference to serious medical needs while in custody.  *Id.*

Defendants are correct that the constitutional standards fall within the ambit of the Eighth Amendment.  However, the standard is the same: deliberate indifference.  Plaintiff alleges that Defendants violated Jeremy Lapachet's Eighth Amendment rights to be free from deliberate indifference to his serious medical needs as a pretrial detainee.  (Doc. 1, ¶ 78(a)).  The Ninth Circuit summarized the deliberate indifference claim in *Conn v. City of Reno*, 591 F.3d 1081 (9th Cir. 2010), *vacated by* 131 S. Ct. 1812 (2011), *reinstated in relevant part by* 658 F.3d 897 (9th Cir. 2011):

> When an individual is taken into custody and thereby deprived of her liberty, the officials who hold her against her will are constitutionally obligated to respond if a serious medical need should arise.  If, with deliberate indifference, these officials fail to respond appropriately and instead **act in a manner that will foreseeably result in harm**, they violate her due process rights.  The same is true when a municipality, with deliberate indifference, **fails to train its law enforcement officers that such inaction will result in constitutional violations.**

*Id.* at 1091 (emphasis added).  Therefore, to establish a plausible claim for failure to provide medical treatment in violation of an inmate's Eighth Amendment rights, Plaintiff (1) "must show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain" and (2) that "defendant's response to the need was 'deliberately indifferent.'"  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  "This second prong . . . is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or

possible medical need and (b) harm caused by the indifference. *Id.*

To satisfy prong (a), plaintiffs must plead facts showing that a defendant knew of and disregarded an excessive risk to inmate health and safety.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." *Id.* at 837. Whether a defendant "had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . **a factfinder may conclude that a [defendant] knew of a substantial risk from the very fact that the risk was obvious."** *Id.* at 842 (emphasis added).

Plaintiff further alleged that Sheriff Christianson "knew and/or had reason to know that Mr. Lapachet had ingested a controlled substance, was having a reaction to this unknown substance, had unstable and elevated vital signs, was acting strange, and had repeatedly engaged in self-mutilation and self-harming behaviors in the days and hours prior to him being found face down in his cell and, as such, knew Mr. LAPACHET was at a serious risk; [he] knew and/or had reason to know that Mr. Lapachet was an ill and/or mentally ill and/or emotionally disturbed person, with immediate and serious medical needs. Despite knowing all of the foregoing, [Sheriff Christianson was] deliberately indifferent to Mr. LAPACHET's immediate and serious medical needs."  (¶ 67).

The County Defendants argue that Plaintiff "fails to indicate how or if Sheriff Christianson actually intervened in the daily custody issues at the jail." (Doc. 51-1, p. 7:3-4).  No case holds that a plaintiff must prove how a defendant knew or had reason to know of a serious risk to an inmate and Defendants cite nothing.  Indeed, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Twombly*, 550 U.S. at 555.  Again, a complaint is only required to give a defendant fair notice of the claim and the grounds on which that claim is based. *Id.*  In *Atayde v. Napa State Hospital ("Atayde II")*, 255 F.Supp.3d 978, 996 (E.D. Cal. 2017), this Court held that a claim against an Undersheriff/Jail Commander was properly pled where it was alleged that the defendant "had direct knowledge of the fact that [decedent] was unlawfully denied necessary care."

Additionally, Plaintiff has been precluded by the County Defendants from pleading Sheriff Christianson's knowledge with any additional specificity because they have repeatedly withheld all records related to this incident even after Plaintiff made lawful requests for those records. (Doc. 1, ¶ 15). From discovery, it may turn out that Sheriff Christianson did not have actual personal knowledge or

involvement with Mr. Lapachet and his medical needs, in which case this personal participation claim may not proceed to trial.  However, at this stage, Plaintiff has adequately pled that he did.

### B. Plaintiff has Sufficiently Pled Claims Against Stanislaus County and for Supervisory Liability Against Sheriff Christianson

#### 1. Claims against the County

 "To survive a motion to dismiss [a *Monell* claim], 'a bare allegation that government officials' conduct conformed to some ***unidentified*** government policy or custom' is insufficient[.]" *Shelley v. Cnty. of San Joaquin*, 954 F. Supp. 2d 999, 1009 (E.D. Cal. 2013) (quoting *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)).  A "complaint must include 'factual allegations that . . . plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'"  *Id.* (quoting *Id.* at 637).

This Court recently explained, "In the context of a *Monell* claim, the *Iqbal/Twombly* standard requires a plaintiff to, at a minimum, "identif[y] the challenged policy/custom, explain[ ] how the policy/custom was deficient, explain[ ] how the policy/custom caused the plaintiff harm, and reflect[ ] how the policy/custom amounted to deliberate indifference[.]"  *Atayde v. Napa State Hospital ("Atayde I")*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639 at *32-33 (E.D. Cal. September 15, 2016) (citing *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009)).  Still, more recently than *Young*, the Supreme Court reaffirmed that not only is there no heightened pleading standard for *Monell* claims, but also a plaintiff in a civil rights case need only plead the factual basis for their claims "simply, concisely, and directly."  *Johnson v. City of Shelby*, 135 S. Ct. at 347 (2014).

Plaintiff's counsel's method of pleading his *Monell* claim has been repeatedly approved by judges in the Eastern and Northern Districts.  *See, e.g., Johnson v. Shasta Co.*, 83 F. Supp. 3d at 930–933 (allegations that Shasta County failed to take action to supervise or train provided sufficient factual basis for a *Monell* claim to survive a motion to dismiss); *Moore v. City of Vallejo*, 73 F. Supp. 3d 1253, 1258–59 (E.D. Cal. 2014) (same); *Neuroth v. Mendocino Cnty.*, No. 15-cv-03226-NJV, 2016 U.S. Dist. LEXIS 11109, at *13–16 (N.D. Cal. Jan. 28, 2016) (denying municipality's motion to dismiss *Monell* claim based in part on allegations of failures to implement and enforce policies, and concluding: "[t]he court finds that County Defendants are attempting to assert too high a burden at this, the pleading stage."); *Lopez v. Cnty. of Tulare*, No. CV-F-11-1547-LJO-BAM, 2012 U.S. Dist. LEXIS 1833, at *25 (E.D. Cal. Jan. 6, 2012)

(same); *M.H. v County of Alameda*, 90 F. Supp. 3d 889, 900–01 (N.D. Cal. 2013) (allegations that County and jail healthcare provider's failure to institute certain procedures and policies, failure to coordinate healthcare assessments, failure to train, hire, supervise, monitor and instruct employees and denial of adequate care for serious medical needs, and medical director's approval, tolerance and/or ratification provided sufficient factual basis for a *Monell* claim to survive a motion to dismiss).[2]

Here, Plaintiff has identified and described unconstitutional policies and customs to show that he may plausibly recover from Stanislaus County and Sheriff Christianson under any one of the three theories of *Monell* liability identified in *Clouthier v. County of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010).  Recognized paths to *Monell* liability include: (1) an unconstitutional custom or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy; and (3) a final policy-maker's involvement in, or ratification of, the conduct underlying the violation of rights.  *Clouthier*, 591 F.3d at 1249–50.  If this Court finds that Plaintiff has alleged facts to show recovery under only one of these theories, then Plaintiff's *Monell* claim should still survive dismissal.  *See Dorger v. City of Napa*, No. 12-cv-440-YGR, 2012 U.S. Dist. LEXIS 124551, at *7 (N.D. Cal. Aug. 31, 2012) (holding that any one of the three bases for *Monell* liability identified in *Clouthier*, "if sufficiently alleged, would preclude dismissal of the claim[.]").

Plaintiff also alleges that Defendants' "customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and

---

[2] *See also* cases brought by other counsel: *Bass v. City of Fremont*, No. C12-4943 TEH, 2013 U.S. Dist. LEXIS 32590, at *11–*12 (N.D. Cal. Mar. 8, 2013) (plaintiff's allegations both that officers were engaged in a pattern and practice of using unnecessary and excessive force and falsely reporting crimes, and that municipality demonstrated deliberate indifference to such constitutional violations by failing to take necessary appropriate or adequate measures to prevent future occurrences, were "plausible" and "sufficient to give the municipal entity notice of the specific policies, customs, and practices that [we]re alleged to have caused the deprivation of [the plaintiff's] rights[.]"); *IDC v. City of Vallejo*, No. 2:13-cv-1987 DAD, 2014 U.S. Dist. LEXIS 78487, at *13–20 (E.D. Cal. June 6, 2014) (similar *Monell* pleading); *Wise v. Nordell*, No. 12-CV-1209 IEG (BGS), 2012 U.S. Dist. LEXIS 128656, at *24–25 (S.D. Cal. Sept. 10, 2012) (plaintiffs' allegations that county condoned employee's violation of county policies for years, "sufficiently alleged a claim for municipal liability under *Monell*."); *East v. City of Richmond*, No. C 10-2392 SBA, 2010 U.S. Dist. LEXIS 117367, at *10–11 (N.D. Cal. Nov. 3, 2010) (plaintiffs' allegation that the Police Chief knew of other, repeated acts of misconduct by the defendant officers, but failed to take any corrective action against these officers, was "sufficient to state a plausible claim for liability under *Monell*.").

the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants" **were a moving force and/or proximate cause of the deprivation of Plaintiff's clearly established and well-settled constitutional rights**.  (Doc. 1, ¶ 98).  *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694-695 (1978) (Municipal liability exists where a government's policy or custom is the moving force of the constitutional violation at issue).

Plaintiff may the County and its Sheriff liable "'when implementation of its official policies or established customs inflicts the constitutional injury.'"  *Clouthier*, 591 F.3d at 1249 (quoting *Monell*, 436 U.S. at 708).  Plaintiff can establish the County's liability by "'demonstrating that … the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'"  *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

As alleged here, "[a] custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded."  *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233–34 (9th Cir. 2011); See Doc. No. 1, ¶¶ 37-44, 51, 63.  This also includes the failure to properly investigate uses of excessive force.  *Id.*; *see also IDC v. City of Vallejo*, No. 2:13-cv-1987 DAD, 2014 U.S. Dist. LEXIS 78487, *17-18 (E.D. Cal. June 6, 2014) (allegations of failure to take measures to prevent other instances of police misconduct sufficient to survive motion to dismiss); see ¶ 97.

A policy or practice that is deliberately indifferent to the serious medical needs of inmates will give rise to municipal liability under § 1983.  *Gibson v. County of Washoe*, 290 F.3d 1175, 1187-89 (9th Cir. 2002) (finding municipal liability under §1983 where County's jail policies denied inmates access to appropriate, competent, and necessary care for serious medical needs).  "In order to comply with their duty not to engage in acts evidencing deliberate indifference to inmates' medical and psychiatric needs, jails must provide medical staff who are '**competent to deal with prisoners**' problems.'"  *Id.* at 1187.

Furthermore, allegations that a jail healthcare provider's failure to institute certain procedures and policies; failure to coordinate healthcare assessments; failure to train, hire, supervise, monitor, and instruct employees; and denial of adequate care for serious medical needs; and medical director's approval, tolerance and/or ratification provide a sufficient factual basis for a *Monell* claim to survive a motion to dismiss.  *M.H.,* 90 F. Supp. 3d at 900–01.

Here, Plaintiff has identified specific customs and policies by both Defendants County of

Stanislaus and CFMG that plausibly would give rise to municipal liability under *Monell*:

    a.  As to the County of Stanislaus and Adam Christianson:

- Failure to supervise and/or discipline correctional officers and/or deputies for misconduct that results in the violation of citizens' civil rights; and/or,
- Failing to institute, maintain, or effectively administer an appropriate training regimen on subjects such as free speech, and use of force; and/or,
- Using or tolerating excessive and/or unjustified force; and/or,
- Using or tolerating inadequate, deficient, and/or improper procedures for handling, investigating, and reviewing complaints of excessive force or officer misconduct, including, but not limited to, claims made under California Government Code section 910 et seq.

As to County of Stanislaus, Adam Christianson, CFMG, and Taylor Fithian, M.D.:

b. To deny inmates at the COUNTY'S jail access to appropriate, **competent**, and necessary care for serious medical and psychiatric needs, including, as described herein, by contracting to provide inadequate medical/psychiatric care for jail inmates (see ¶ 39, supra), by contracting to create financial and other incentives for CFMG to deprive inmates of necessary emergency and hospital care (see ¶ 39), and by failing to require that all medical/psychiatric staff and supervisors at the jail be properly trained, supervised, credentialed, and licensed as required by law (see ¶¶ 12, 58); [and see, *Gibson*, 290 F.3d at 1187 ("jails must provide medical staff who are '**competent to deal with prisoners**' problems")];

c. To fail to properly classify, house, and/or monitor inmates suffering from: negative or unpredictable reactions to the ingestion of a controlled substance, mental health crises or who are at risk of self-harm and/or who pose a danger to the their own safety, including placement on self-harm watch or suicide watch with proper suicide precautions, including failing to consider in any way the clear and obvious danger of placing inmates at risk of suicide in cells with means to injure themselves (including bunk beds, horizontal bars, clothing, and ligature materials) and without the frequent, logged observation required by law;

d. To fail to properly classify, house, and/or monitor inmates suffering from unknown reaction to the ingestion of an unknown substance, drug induced psychosis, inmates suffering from drug overdoses, and inmates suffering adverse effects from drug ingestion, and/or mental illness, and/or emotional disturbance, as well as failing to ensure that a toxicology screen test is performed to determine the nature of a substance an inmate has ingested, provide appropriate observation and a treatment plan for serious medical needs, prevention and addressing the risk of self-harm by inmates, suicide attempt prevention, appropriate observation of suicidal or otherwise emotionally disturbed inmates, providing appropriate observation and a treatment plan for inmates suffering the effects of drug-induced states of psychosis and/or overdoses and/or inmates who are a danger to themselves by virtue of being under the influence of drugs and/or mental illness and/or emotional disturbance, as well as care and treatment for mental illness and emotional disturbance, monitoring the mental health and vital signs of inmates, promptly rendering and/or summoning medical care when it is needed, and transferring inmates to inpatient medical or psychiatric facilities where their medical needs require such a transfer;

e. To allow, encourage, and require unlicensed, inadequately trained, and inadequately supervised CFMG staff to attempt to render treatment, when a physician is needed, as well as to allow, encourage, and require inadequately trained, supervised, and credentialed CFMG staff to make or be involved with decisions to place jail inmates on, and remove inmates from, safety cell/suicide watch in direct violation of applicable law and standards, including permitting and incentivizing unlicensed and untrained CFMG staff to remove inmates with urgent medical conditions or who might be suffering from drug induced psychosis or severely mentally ill inmates from safety cell/suicide watch without a reasonable, appropriate, and lawful basis for doing so;

f. To fail to institute proper procedures and training to coordinate inmate assessment, placement, safety cell/suicide watch decisions, transfers to psychiatric facilities, transfers to emergency, acute care medical facilities, and failing to coordinate or provide appropriate care with the CFMG staff, a jail physician, jail psychiatrist, and/or jail corrections staff where there was an obvious need for such to prevent the harm that occurred here to Mr. Lapachet;

g. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures for handling, housing, and caring for individuals suffering unknown and toxic reactions to the ingestion of a controlled substance, as well as inmates that are altered, mentally ill, and/or emotionally disturbed inmates at the COUNTY Jail, including alternatives to placing such ill and disturbed inmates in need of treatment in solitary confinement segregation cells that are intended and used to punish inmates, with the obvious consequence that the mental health needs of such inmates remain unaddressed and are in fact aggravated and increased by such punitive treatment;

h. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and in subparagraphs (a)-(g) above, when the need for such was obvious, with deliberate indifference to the rights and safety of Plaintiff and the public, and in the face of an obvious need for such policies, procedures, and training programs.

(Doc. 1, ¶ 93). Several of these factually identified customs or practices are almost identical to those in

*IDC v. City of Vallejo*, No. 2:13-cv-1987 DAD, 2014 U.S. Dist. LEXIS 78487, (E.D. Cal. June 6, 2014),

and the cases cited therein, as well as several other complaints drafted by Plaintiff's counsel (at pp. 10-11,

above: *Johnson v. Shasta Co., supra., Moore v. City of Vallejo, supra., Lopez v. Tulare Co., supra,*

*Neuroth v. Mendocino Co, supra., and M.H. v. Alameda Co., supra.*) where district courts declined to

dismiss the plaintiff's *Monell* claim predicated on a custom or practice theory.[3]

---

[3] *See also Bass v. City of Fremont*, No. C12-4943 TEH, 2013 U.S. Dist. 32590, at *11–*12 (N.D. Cal. Mar. 8, 2013) (plaintiff's allegations both that the defendant officers were engaged in a pattern and practice of using unnecessary and excessive force and falsely reporting crimes, and that the municipality demonstrated deliberate indifference to such constitutional violations by failing to take necessary appropriate or adequate measures to prevent future occurrences, were "plausible" and "sufficient to give the municipal entity notice of the specific policies, customs, and practices that [we]re alleged to have caused the deprivation of [the plaintiff's] rights[.]"); *Wise v. Nordell*, No. 12-CV-1209 IEG (BGS), 2012 U.S. Dist. LEXIS 128656, at *24 (S.D. Cal. Sept. 10, 2012) (plaintiffs' allegations that a county employee

As stated in his Complaint, Defendants refused to provide Plaintiff with records or information concerning the subject incident. (Doc. 1, ¶ 14). Defendants now complain that some of Plaintiff's allegations listed in ¶ 93 of the Complaint do not contain enough facts and do not identify specific policies. (Doc. 51-1 p.9-14 *passim*). However, the Supreme Court has reaffirmed that nothing more than notice pleading is required for *Monell* claims. *Johnson v. City of Shelby, supra,*.

Plaintiff can plead a "failure-to-train" claim against a municipality "without showing a pattern of constitutional violations where [as here] a 'violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006); *see also* Ninth Circuit Model Jury Instruction No. 9.7, Section 1983 Claim Against Local Governing Body Defendants Based on Policy of Failure to Train. This Court recognized that a plaintiff can plead a *Monell* claim by alleging that a sheriff, as a final policy-making official of a county, violated the plaintiff's rights in his supervisory capacity. *Atayde II*, 255 F.Supp.3d at 996-998.

Furthermore, the County is directly liable for CFMG's *Monell* violations. See *West v. Atkins*, 487 U.S. 42, 55–56 (1988). Stanislaus County's duty to provide a constitutional level of medical care for inmates is essentially non-delegable. Both CFMG and the County would be liable for any deprivation of rights caused by CFMG or its staff at the jail:

> **Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody**, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights. The State bore an affirmative obligation to provide adequate medical care to West; the State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract.

*Id.* (emphasis added). "[I]f this were the basis for delimiting § 1983 liability, the state will be free to contract out all services which it is constitutionally obligated to provide and leave its citizens with no means for vindication of those rights, whose protection has been delegated to 'private' actors, when they have been denied." *Id.* at n.14 (quotation omitted). *See Pollard v. GEO Group, Inc.*, 607 F.3d 583, 591

had acted contrary to county policy and violated their constitutional rights, and that he had acted in this manner for years, and that the county had condoned his conduct, "sufficiently alleged a claim for municipal liability under *Monell*."); *East v. City of Richmond*, No. C 10-2392 SBA, 2010 U.S. Dist. LEXIS 117367, at *11 (N.D. Cal. Nov. 3, 2010) (plaintiffs' allegation that the Police Chief knew of other, repeated acts of misconduct by the defendant officers, but failed to take any corrective action against these officers, was "sufficient to state a plausible claim for liability under *Monell*.").

(9th Cir. 2010) (quoting *West*, 487 U.S. at 55-56) ("*West* makes clear that '[c]ontracting out' care '*does not* relieve' the government of its duty to provide adequate care or 'deprive inmates of the means to vindicate their 8th Amendment rights.'"), *rev'd on other grnds, Minneci v. Pollard*, 132 S. Ct. 617 (2012).

Additionally, Plaintiff has alleged that the County's and CFMG's policies of allowing uncredentialed and unsupervised L.V.N.s to conduct jail medical assessments is contrary to national jail healthcare standards and state regulations. *M.H*, 62 F.Supp.3d at 1085-1087. This fact establishes the **incompetence** of Stanislaus County's jail medical staff and the inadequacy of the medical screening that Stanislaus County provided its inmates, including Plaintiff, as well as the County's deliberate indifference to inmates' serious medical needs. Jails must provide medical staff who are competent to deal with inmates' medical needs and must provide competent medical screening. *Gibson*, 290 F.3d at 1187-1189.

Defendants also complain that Plaintiff "does not sufficiently allege incidents occurring with any frequency or consistency to establish a custom or practice by Defendant County." (Doc 51-1, p. 12:4-5). They cite to no authority supporting dismissal simply because a Plaintiff does not cite specific incidents that establish a custom at the time he filed the Complaint.[4] Discovery in this matter may reveal that the County's failure to investigate, or to adequately investigate, prior jail misconduct led to the misconduct that catastrophically injured Plaintiff and rendered him a paraplegic. Defendants' motion to dismiss should be denied so Plaintiff can begin discovery to establish the full evidentiary basis for these claims.

### 2. Supervisory liability against Sheriff Christianson

The Ninth Circuit has "long permitted plaintiffs to hold supervisors individually liable in § 1983 suits when culpable action, or inaction, is directly attributed to them" and has "never required a plaintiff to allege that a supervisor was physically present when the injury occurred." *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). A supervisor such as Defendant Sheriff Christianson may be liable in his individual capacity:

---

[4] *Meehan v. County of Los Angeles,* 856 F.2d 102, 107 (9th Cir. 1988) and *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) were directed verdict cases where, after the parties had the benefit of discovery, the plaintiff presented insufficient evidence of a custom of policy that caused his alleged constitutional violation. Neither of these cases hold that a plaintiff must plead his *Monell* claims in the manner suggested by Defendants in order to survive a motion to dismiss. Further, in *Atayde II*, (255 F.Supp.3d at 997), this Court cited *Gillette*, 979 F.2d at 1342, for the proposition that "[A] single decision by a municipal policymaker may be sufficient to trigger section 1983 liability under Monell . . . [if there is] evidence of a conscious, affirmative choice."

> . . . for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation . . .; or for conduct that showed a reckless or callous indifference of the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).  The requisite causal connection between the supervisor's wrongful conduct and the constitutional violation "can be shown by authorizing or approving practices that cause injury (see *Redman* [*v. County of San Diego*], 942 F.2d [1435,] 1447–48[(9th Cir. 1991)]; by inadequate training (see *Preschooler II v. Clark County School Bd. of Trustees,* 479 F.3d 1175, 1183 [(9th Cir. 2007)]); by acquiescence in longstanding policy (see *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 894 (9th Cir. 1990)); or by condoning actions of subordinates (*see Blankenhorn v. City of Orange,* 485 F.3d 463, 485-86 (9th Cir. 2007))."

*George v. Sonoma Cnty.*, No. C-08-02675, 2008 U.S. Dist. LEXIS 103665, at *18 (N.D. Cal. 2008).

Additionally, in *Frary v. County of Marin*, No. C 12-3928 MEJ, 2012 U.S. Dist. LEXIS 177517 (N.D. Cal. Dec. 13, 2012), the court found that the plaintiff had adequately alleged a claim for supervisory liability under § 1983 for failing to "properly train, assign, supervise, and guide his staff to take the necessary measures to ensure the health and safety of arrested persons." *Id.* at *8.  In that case, the decedent died of a drug overdose while in custody despite law-enforcement employees having been informed that the decedent had been carrying narcotics prior to his arrest, and having observed him to appear sick on more than one occasion while in custody.  *Id.*

Plaintiff's supervisory liability claim against Defendant Christianson in his individual capacity is plausibly pled.  Defendant Christianson was a final policy maker, ultimately responsible for all policies, procedures, and training at the jails.  (Doc. 1, ¶5).  Defendant Christianson,

> failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights and serious medical needs of Plaintiff.  [He] either directed his or her subordinates in conduct that violated Plaintiff's rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Plaintiff of rights, OR knew his or her subordinates were engaging in acts likely to deprive Plaintiff of rights and failed to act to prevent his or her subordinate from engaging in such conduct, OR disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate Plaintiff's rights, and in fact did cause the violation of Plaintiff's rights. (See, Ninth Circuit Model Civil Jury Instruction 9.4).  Furthermore, [he] is liable in [his] failures to intervene in [his] subordinates' apparent violations of Plaintiff's rights.

(¶ 92).  In *Atayde II*, this Court found almost identically pleaded allegations against an undersheriff/jail commander were "sufficient to state a claim under § 1983 for deliberate indifference."  255 F.Supp.3d at 996.  Defendant Christianson also "directed, encouraged, allowed, and/or ratified" the unconstitutional County

customs and policies described in paragraph 93. Defendant Christianson also ratified Defendants' violations of rights with his personal knowledge of his subordinates misconduct. (¶ 97). Defendant Christianson failed to "adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline" Defendants DOE Deputies and other CFMG personnel. (¶ 98). Plaintiff also alleges that all of Defendant Christianson's actions and omissions described in the Complaint were a moving force and/or proximate cause of the deprivations of Jeremy Lapachet's constitutional rights free from deliberate indifference to serious medical needs while in custody. (*Id.*).

Plaintiff's supervisory liability claims against Defendant Christianson are well pleaded. Plaintiff has alleged facts showing that the individual as-yet unidentified County employees and agents, were deliberately indifferent to Mr. Lapachet's serious medical needs and used excessive and unreasonable force against Mr. Lapachet rendering him a paraplegic. (Doc. 1, ¶¶33, 34, 37-48; 50–51; 54-58; 60-63; 65-69). Defendant Christianson's "liability … rest[s] in a causal connection between [the individual CFMG and County Defendants'] wrongful actions and [the] constitutional deprivation." *Tandel v. Cnty. of Sacramento*, No. 2:11-cv-00353-MCE-AC, 2014 U.S. Dist. LEXIS 6513, at *40–41 (E.D. Cal. Jan. 17, 2014) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Starr*, 652 F.3d at 1207).

Supervisory liability is imposed against a supervisory official "'in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.'" *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations and punctuation omitted)); *see also* Ninth Circuit Model Civil Jury Instruction 9.3. "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) (en banc) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978); *see also Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014) (citing *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997) (In civil rights cases, "[c]ausation may be found even if there are multiple links in the chain connecting the defendant's unlawful conduct to the plaintiff's injury, and there's no requirement that the defendant's conduct comprise the last link in the chain.")).

Moreover, under California law "'[t]he sheriff is required by statute to take charge of and keep the

county jail and the prisoners in it, and is answerable for the prisoner's safekeeping.'" *Starr*, 652 F.3d at 1208 (citations omitted). *Starr* held that allegations that the actions or inactions of the person "answerable for the prisoner's safekeeping" caused the Plaintiff's injury stated a claim of supervisory liability for deliberate indifference. *Starr*, 652 F.3d at 1208. Therefore, the supervisory liability claims against Defendant Christianson are plausibly pled. *See, e.g., DiGiantomasso v. Tulare Cnty.*, No. 1:14-cv-01633-MCE-GSA, 2015 U.S. Dist. LEXIS 70828, at *34 (E.D. Cal. June 1, 2015) (allowing supervisory liability claim to survive a motion to dismiss where, as here, plaintiffs pleaded a failure-to-train theory, specifically that the Sheriff failed to train his employees to recognize the risk of suicide and care for the mentally ill inmates); *M.H.*, 90 F. Supp. 3d at 900–901 (denying defendants' motion to dismiss plaintiffs' supervisory liability claim based on allegations that supervisory defendant failed to institute certain policies and failed to supervise and monitor personnel).

**C. Plaintiff has pleaded a plausible claim under California Civil Code § 52.1 (Bane Act) based on Defendants Antonio's, Berghorst, Trinidad's Devendra's, King's, Tawana's, and Alejandre's deliberate indifference to Mr. Lapachet's serious medical needs, and Defendant County and Sheriff Christianson are vicariously liable**

California Civil Code § 52.1, the Bane Act, provides a private right of action for damages against any person who "interferes," or "attempts to interfere by threats, intimidation, or coercion," with the exercise or enjoyment of rights under California or federal law." Cal. Civ. Code § 52.1(a)–(b). The Bane Act simply requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998). Although enacted in response to the increasing incidence of hate crimes in California, "the Bane Act is not limited to hate crimes." *Bender v. Cty. of L.A.*, 217 Cal. App. 4th 968, 977 (2013). Discriminatory intent or animus is not required. *Venegas v. Cty. of L.A.*, 32 Cal. 4th 820, 841–43 (2004). Nor is "violence or threats of violence" required. *Moreno v. Town of Los Gatos*, 267 F. App'x. 665, 666 (9th Cir. 2008) (citing *Venegas*, 32 Cal. 4th at 843) ("Reading section 52.1 on its own terms, as *Venegas* directs, the statutory language clearly requires only 'threats, intimidation, or coercion.'").

The requirement to show "threat, intimidation, or coercion" is not onerous where government actors directly violate a person's rights. *See Venegas*, 32 Cal. 4th at 850–51 (Baxter, J., concurring) ("[I]t should not prove difficult to frame many, if not most, asserted violations of any state or federal statutory or constitutional right, including mere technical statutory violations, as incorporating a threatening, coercive,

or intimidating verbal or written component.").  Notably, Defendants have not moved to dismiss Plaintiff's deliberate indifference claim (Count One), under 42 U.S.C. § 1983, alleging that the individual Defendants violated Mr. Lapachet's rights under the Eighth Amendment through their deliberate indifference to his serious medical needs (Defendants only move to dismiss Defendant Christianson from that claim).  The deliberate indifference claim pleads a Bane Act claim.

Defendants contend that "[i]ncarceration, coupled with deliberate indifference to medical and psychiatric needs does not constitute threats, intimidation, or coercion for purposes of section 52.1." (Doc. 51-1, 17:13-15).  To the contrary, as this Court explained: "[t]he court finds the reasoning of the decision in *M.H.* to be more persuasive, adopts that analysis and **finds that threats, coercion, and intimidation are inherent in a deliberate indifference claim**."  *Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013) (citation omitted; emphasis added)).  In fact, the *M.H.* court specifically held that the jail's medical director, based on his deliberately indifferent supervisory liability with no personal involvement with the decedent, also was liable for violating the Bane Act.  *Id.*  See also, *Page v. County of Madera*, No. 1:17-cv-00849-DAD (Doc. 30, Order dated Dec. 4, 2017), re: motion to dismiss) (denying motion to dismiss Bane Act claim based on deliberate indifference to inmate's medical needs).  The California Court of Appeal recently endorsed the holdings of this Court, based on *M.H.*, that "deliberate indifference to a prisoner's serious medical needs" fully satisfies the Bane Act.  *Cornell v. City and County of San Francisco*, __Cal.App.4th__, 2017 Cal.App. LEXIS 1011 at *58, f.n. 31, 2017 WL 5495096 (Cal. Ct. App. Nov. 16, 2017).

Similarly, in *Simmons v. Superior Court of San Diego County*, 7 Cal. App. 5th 1113, 1126 (2016), the California Court of Appeal recently held that the "threat, intimidation, or coercion" under the Bane Act need not itself be a violation of rights, but can be satisfied even by lawful conduct that is threatening, intimidating, or coercive.  In *Simmons*, the violation of rights was an unlawful strip search; the coercion element was satisfied by an inherently coercive **lawful** arrest.  *Id.* at 1126–27.  *Simmons* further establishes that *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947 (2012), merely "clarified that the Bane Act requires that the challenged conduct be intentional," in contrast to the facts of *Shoyoye* where the plaintiff was "*lawfully* arrested but inadvertently overdetained by 16 days due to a paperwork error." *Simmons*, 7 Cal. App. 5th at 1125.  Numerous state and federal courts have limited *Shoyoye* to its

unique facts and held that the coercion element may be intrinsic to constitutional violations.[5]  Most recently, *Cornell* thoroughly analyzed *Shoyoye,* limiting it to its narrow facts as "a jail overdetention case that began with a lawful arrest."  2017 Cal.App. LEXIS 1011 at *48-56.

Indeed, as this Court has explained: "[f]or certain constitutional violations, a plaintiff does not need to make independent allegations concerning the defendant's coercive or threatening conduct in order to bring a § 52.1 claim."  *Atayde*, 2016 U.S. Dist. LEXIS 126639, at *21–22.  "For example, '[w]here Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force.'"  *Atayde*, 2016 U.S. Dist. LEXIS 126639, at *22 (quoting *Johnson*, 83 F. Supp. 3d at 934) (citation omitted; emphasis in original)); *see also Chaudhry v. City of L.A.*, 751 F.3d 1096, 1105–06 (9th Cir. 2014) (quoting *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under §52.1 are the same as under § 1983.")).  This Court's correct analysis has now been adopted by the California Court of appeal.  *Cornell, supra,* 2017 Cal.App. LEXIS 1011 (agreeing with "the majority of federal district courts in California" that "[w]here Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force").

A deliberate indifference claim involves "affirmatively culpable conduct," and so states a claim

---

[5] *See, e.g., D.V. v. City of Sunnyvale*, 65 F. Supp. 3d 782, 788 (N.D. Cal. 2014) ("[T]he great weight of authority in the Northern District of California has … confined *Shoyoye* to circumstances involving negligent conduct."); *M.H.*, 90 F. Supp. 3d at 898 ("[T]he relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct, and . . . *Shoyoye* applies only when the conduct is unintentional."); *Rodriguez v. City of Modesto*, No. 1:10-CV-01370-LJO-MJS, 2013 U.S. Dist. LEXIS 172958, at *35–36 (E.D. Cal. Dec. 9, 2013) (applying *M.H.*'s Bane Act analysis and holdings); *Sanchez v. City of Fresno*, No. 1:12-CV-00428-LJO-SKO, 2013 U.S. Dist. LEXIS 68561, at *33–37 (E.D. Cal. May 14, 2013) (Eastern District adopts analysis of *M.H.* court in Northern District); *Dillman v. Tuolumne Cty.*, No. 1:13-CV-0040 LJO SKO, 2013 U.S. Dist. LEXIS 65206, at *54–58 (E.D. Cal. May 7, 2013) (same); *Bass v. City of Fremont*, No. C12-4943 TEH, 2013 U.S. Dist. LEXIS 32590, at *13–14 (N.D. Cal., Mar. 8, 2013) (rejecting "a broad reading of *Shoyoye*—one that would, perversely, preclude any [Bane Act] action in which the underlying statutory or constitutional violation involved 'threats, intimidation, or coercion'" and finding such a reading "contrary to the plain language of the statute" and contrary to *Venegas*); *Davis v. City of San Jose*, No. 14-CV-02035 BLF, 2014 U.S. Dist. LEXIS 84641, at *24 (N.D. Cal. June 20, 2014) ("However, the [defendants] ignore the wealth of subsequent case law that has limited *Shoyoye* to its narrow circumstances—case law with which this Court agrees.").

under the Bane Act.  *Atayde*, 2016 U.S. Dist. LEXIS 12639, at \*23–24; *M.H.*, 90 F. Supp. 3d at 899; *see also Neuroth v. Mendocino Cty.*, No. 15-cv-03226-NJV, 2016 U.S. Dist. LEXIS 11109, at \*22 (N.D. Cal. Jan. 28, 2016) (Bane Act claim pled where complaint alleged Sheriff implemented policies, practices, and customs that led to the inmate's death due to jailor's deliberate indifference to serious medical/psychiatric needs).  Indeed, as this Court has explained: "because a plaintiff alleging a Bane Act violation based upon deliberate indifference is required to allege and show affirmatively culpable conduct on the part of prison officials, such a plaintiff does not rely solely on the inherently coercive nature of detention in establishing his claim."  *Atayde*, 2016 U.S. Dist. LEXIS 12639, at \*24 (citation omitted).  See also, *M.S. et al. v. County of Ventura*, et al. 16-cv-03084-BRO (C.D. Cal. 2017) ("Because 'deliberate indifference has been a substantially higher standard than negligence, and has been associated with affirmatively culpable conduct,' the Court finds that 'a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference . . . adequately states a claim for relief under the Bane Act.'") ***Indeed, what could be more coercive and intimidating than where—knowing that a person is powerless to care for his own serious medical needs, and where that person is in one's care and custody, and it is one's sworn duty to provide for that person's needs—one is deliberately indifferent to the person's needs and suffering, thereby, predictably causing his death?***  Because Plaintiff has pleaded a plausible deliberate indifference claim—the adequacy of which Defendants do not contest—he has necessarily pleaded a plausible § 52.1 claim.

Defendants do not challenge the sufficiency of Plaintiff's claims against the individual Defendants for violations of California Government Code § 52.1 (Bane Act) or for Plaintiff's claims of assault and battery.  California Government Code § 815.2(a) provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee[.]"  "This provision clearly allows for vicarious liability of a public entity when one of its police officers uses excessive force in making an arrest."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 488 (9th Cir. 2007); *M.H. v. County of Alameda*, 62 F. Supp. 3d at 1098 (vicarious liability for public entity when its Sheriff's Deputies used excessive force against a pretrial detainee in county jail).

Stanislaus County is vicariously liable for its employees' violations of the Bane Act.  Cal. Govt. Code § 815.2; *M.H.*, 90 F. Supp. 3d at 897; *Perreault v. City of Westminster*, Case No. CV 12-2767-CAS

(ANx), 2013 U.S. Dist. LEXIS 31780, at *19 (C.D. Cal. Mar. 7, 2013). *Towery v. State of California* is inapplicable to this case. There, the plaintiff sued the State of California, and the court in that case held that the State was immune from liability unless a specific statute created an exception. *Id.*, 14 Cal. App. 5th 226 (2017). Further, that court acknowledged that "Section 815.2, subdivision (a) provides that '[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.'" *Id.* at 233, fn6.

California Government Code § 815.2(a) makes a public entity vicariously liable for the common law torts of its employees done in the scope of their employment. **Vicarious liability applies whether or not the employee is a defendant or even identified by name. Legis. Comm. Cmts., West's Ann. Gov't Code, foll. § 815.2 ("Under this section, it will not be necessary in every case to identify the particular employee upon whose act the liability of the public entity is to be predicated. All that will be necessary will be to show that some employee of the public entity tortiously inflicted the injury in the scope of his employment under circumstances where he would be personally liable.").** *See also, Becerra v. County of Santa Cruz* (1998) 68 Cal. App. 4th 1450, 1462, n. 5 (identification of a specific employee tortfeasor is not required for vicarious liability of a municipality); *Perez v. City of Huntington Park* (1992) 7 Cal. App. 4th 817, 820-21 (city liable where plaintiff could not identify officers).

Sheriff Christianson is also liable under the Bane Act because Plaintiff adequately states a Bane Act claim against the individual CFMG and deputy defendants. Their liability gives rise to respondeat superior liability with respect to Sheriff Christianson. *See M.H.*, 90 F. Supp. 3d at 897. This reasoning was subsequently followed in *Neuroth v. Mendocino Cnty.* when that court held, "based on the allegations in the complaint related to the Deputy Sheriffs' actions and the allegations that [the Sheriff] failed to train his employees and had implemented policies, practices, and customs that led to the [decedent's] death, the court finds that Plaintiff has sufficiently pled a claim against [the Sheriff] in his individual capacity under the Bane Act. *Id.*, No. 15-cv-03226-NJV, 2016 U.S. Dist. LEXIS 11109, *22 (N.D. Cal. 2016).

Defendants again complain that Plaintiff pled no specific facts against Defendant Christianson or against any other County employee to state a Bane Act Claim. (Doc. 51-1, p. 18-19). First, additional facts are unnecessary, since deliberate indifference to an inmate's serious medical needs proves a Bane Act claim. (See discussion, *supra*.) Second, this argument is disingenuous when County Defendants

have ignored or refused requests by Plaintiff for documents related to this incident, as Plaintiff has alleged.  (Doc. 1 ¶ 14).  Plaintiff pleads that the County of Stanislaus and Defendant Christianson as well as Does 1-20 violated Plaintiff's rights to be free from the use of unlawful and/or unreasonable force, outrageous government conduct, unreasonable searches and seizures, free from deliberate indifference to his serious medical needs while in custody, and the rights to protection from bodily restraint, harm, or personal insult and to medical care.  (*Id.* ¶ 101).

### D.  Plaintiff's § 845.6/Negligence Claim is Well Pled.

A public employee *and* a public entity are liable if: "(1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care."  *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006) (citing Cal. Gov't Code § 845.6), *overruled on other grounds by WMX Techs, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).  Such care includes both diagnosis and treatment.  *Kodimer v. County of San Diego*, No. 07-CV-2221-BEN (NLS), 2010 U.S. Dist. LEXIS 65090, *32 (S.D. Cal. 2010).  Defendants —and, vicariously, Stanislaus County—may be so liable.  Section 845.6 imposes liability for a failure to reasonably summon medical care for a serious medical need of which the defendant has actual or constructive knowledge. *See, e.g., Watson v. State of California*, 21 Cal. App. 4th 836, 841 (1993); *Zeilman v. Cnty. of Kern*, 168 Cal. App. 3d 1174, 1184 (1985) ("[Q]uestions about jail personnel's actual *or constructive* knowledge of a prisoner's need for immediate medical care as well as the reasonableness of actions taken to meet this need are factual questions.") (emphasis added); *Johnson v. Cnty. of Los Angeles*, 143 Cal. App. 3d 298, 317 (1983) ("[T]he questions of Sheriffs' actual or constructive knowledge of Decedent's need for immediate care, and of Sheriffs' reasonable action to summon or not to summon such care, are questions of fact to be determined at trial.").  The objective knowledge standard under the state law claim therefore reaches conduct that Plaintiff's federal claim does not.  *See Lucas v. Cnty. of Los Angeles*, 47 Cal. App. 4th 277, 288 (1996) (holding federal court's dismissal of deliberate indifference claim did not constitute res judicata for plaintiff's section 845.6 claim because of differing knowledge requirements).

The § 845.6 claim is plausibly pled.  The Complaint alleges that the individual Defendants or Santa Clara County knew or had reason to know of Mr. Lapachet's need for medical care, and that they failed to take reasonable action to summon and/or provide Mr. Lapachet access to such care and treatment.  (Doc. 1, ¶ 117).  While Defendants point out that Mr. Lapachet was placed in a sobering cell and monitored over the course of the next 30 hours after ingesting the unknown drug, he was neither

transported to an inpatient medical or psychiatric care facility, nor placed in a proper safety cell on suicide watch. (*Id.*). Not one Defendant took action to summon or to provide him access to such medical care and treatment, or provide him housing accommodations necessary for him under such circumstances. (*Id.*).

*Castaneda v. Department of Corrections and Rehabilitation*, 212 Cal. App. 4th 1051 (2013), cited by the Defendants in their motion is distinguishable, because, unlike Plaintiff – who had ingested an unknown drug that caused psychosis, highly elevated medical signs, and self-harming behavior –the prisoner in *Castaneda* was not experiencing an acute medical emergency, but merely an abnormal exam. Ultimately this is an issue of fact for the jury. *Estate of Abdollahi v. Cnty. of Sacramento*, 405 F. Supp. 2d 1194, 1215 (E.D. Cal. 2005); *Lum v. Cnty. of San Joaquin*, 756 F. Supp. 2d 1243 (E.D. Cal. 2010) (citing *Zeilman v. Cnty. of Kern*, 168 Cal. App. 3d 1174, 1184 (1985)) ("California courts have recognized that questions about jail personnel's actual or constructive knowledge of a prisoner's need for immediate medical care as well as the reasonableness of actions taken to meet this need are factual questions most appropriately decided by a jury."). Plaintiff adequately states a claim for relief under § 845.6 and Defendants' motion to dismiss should be denied.

### E.  Negligence

Defendants do not challenge the sufficiency of Plaintiff's claims against the individual Defendants for negligence. Defendant County is vicariously liable under California Government Code § 815.2(a). (See § 815.2 discussion, p. 23, above). California Government Code § 844.6 does not immunize Defendants from Plaintiff's negligence claim, because § 844.6 provides that "[n]othing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission."

### V.    CONCLUSION

For all of the foregoing reasons, Defendants' motion should be denied in its entirety.

Dated: December 5, 2017         HADDAD & SHERWIN LLP
                                LAW OFFICE OF SANJAY S. SCHMIDT

                                */s/ Maya Sorensen*
                                _____

                                MAYA SORENSEN
                                Attorneys for Plaintiff
                                JEREMY LAPACHET