UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY LAPACHET,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, INC., et al.,<br><br>　　　　Defendants. | No. 1:17-cv-01226-DAD-EPG<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. No. 51) |

This matter is before the court on defendants' motion to dismiss. (Doc. No. 51.) On December 19, 2017, a hearing on the motion was held. Attorneys Teresa Allen, Michael Haddad, and Sanjay Schmidt appeared telephonically on behalf of plaintiff Jeremy Lapachet. Attorneys Jemma Saunders, Jesse M. Rivera, and Jill Nathan appeared telephonically on behalf of defendants. Having reviewed the parties' briefing and heard arguments, and for the reasons that follow, defendants' motion to dismiss will be granted in part and denied in part.

**BACKGROUND**

Plaintiff brings this action against the County of Stanislaus ("County"), Sheriff Adam Christianson ("Christianson"), California Forensic Medical Group, Inc. ("CFMG"), various CFMG employees, and unidentified Stanislaus County Sheriff's Department supervisors. In his complaint, plaintiff alleges as follows. When plaintiff entered the Stanislaus County Jail on December 9, 2014, he possessed the ability to walk, jog, run, and use all of his extremities freely.

(Doc. No. 1 (Compl.) at ¶ 25–26.)  On or about October 26, 2015, he left the jail on a stretcher as a quadriplegic, with injuries that included a fractured skull, multiple subdural hematomas, a traumatic brain injury, severe spinal cord injuries, and a torn rotator cuff.  (*Id.*)  On October 24, 2015, around 5:50 p.m., plaintiff was placed in the jail's "Sobering Cell" because County and CFMG staff became aware that he had been injected with and was under the influence of an unknown controlled substance.  (*Id.* at ¶ 27.)  Specifically, defendant Jessamae Trinidad, R.N. ("Trinidad"), a CFMG employee, received a report that plaintiff had been injected with an unknown substance by another inmate.  (*Id.*)  Trinidad noted three red marks in plaintiff's right AC joint, with bruising present.  Plaintiff reported to Trinidad that he had experienced the effects of various drugs prior to being in custody, but that the effects produced by this unknown substance did not feel like any he had experienced previously.  (*Id.*)  Prior to his placement in the Sobering Cell, plaintiff had also been observed to be engaging in self-harm, including punching himself multiple times.  (*Id.* at ¶ 28.)  County jail staff reported this to CFMG staff.  (*Id.*)

Less than an hour later, defendant Tabitha King ("King"), a CFMG employee and L.V.N., documented an "Emergency Response," indicating that she had responded to a call for possible drug use.  (*Id.* at ¶ 29.)  Defendant Lani Antonio ("Antonio"), another CFMG employee, was also notified of the call.  (*Id.*)  King responded and found plaintiff sitting in a chair with handcuffs on.  (*Id.*)  His symptoms included trembling, restlessness, dilated pupils, and elevated vital signs.  (*Id.*)  Defendant Antonio directed that plaintiff's vital signs be checked every six hours until he stabilized.  (*Id.*)

Around 8:02 p.m. that same evening, defendant Trinidad checked the Sobering Cell and observed plaintiff touching his chest, pacing in his cell, and behaving restlessly.  (*Id.* at ¶ 30.)  Plaintiff also complained that his lungs and chest were filling with fluid.  (*Id.*)  Rather than treating plaintiff, Trinidad merely told plaintiff to "relax."  (*Id.*)  Around 11:46 p.m., defendant Judith Alejandre, L.V.N. ("Alejandre"), a CFMG employee, checked the Sobering Cell again.  (*Id.* at ¶ 31.)  Defendant Alejandre took plaintiff's vital signs, which remained elevated.  (*Id.*)  Although plaintiff had been injected with an unknown substance, and had displayed elevated vital signs for several hours, defendant Alejandre did not request any further medical treatment or

order a toxicology screening test. (*Id.*)  At about midnight, plaintiff was moved from the Sobering Cell to a "Safety Cell," although the Safety Cell lacked the precautions that such cells normally have.  (*Id.*)

On October 25, 2015, around 5:01 a.m., plaintiff's vital signs were checked again, and remained elevated.  (*Id.* at ¶ 35.)  Defendant Veronica Berghorst, R.N. ("Berghorst"), a CFMG employee, observed plaintiff and related to CFMG medical staff that plaintiff had told her "people were going to get him in his cell."  (*Id.*)  Defendant Berghorst did not order a toxicology screening or request medical treatment, despite the fact that plaintiff's vital signs had been elevated for roughly 10 hours.  (*Id.*)  At 9:08 a.m., CFMG R.N. Varinder Sablok attempted to perform a "Drug Withdrawal" monitoring evaluation, but did not do so because County staff at the jail had removed plaintiff from his cell.  (*Id.* at ¶ 36.)

Around 4:00 p.m. on October 25, 2015, defendant Amardeep Tawana L.V.N. ("Tawana"), a CFMG employee, conducted a check on plaintiff to monitor the effects of the substance he had taken.  (*Id.* at ¶ 37.)  At that time defendant Tawana, as well as other CFMG and County staff, observed plaintiff standing beside the wall in his cell with a towel tied tightly around his left wrist.  (*Id.*)  Defendant Tawana requested that County staff open the cell in order for Tawana to check plaintiff's vital signs, but County staff refused to do so.  (*Id.*)  Around 5:30 p.m. that same day, CFMG staff, including defendant Tawana, were summoned for a "man down" call because plaintiff was bleeding from his nose and the right side of his head.  (*Id.* at ¶ 38.)  No further medical examination or treatment was performed at that time since defendant Tawana observed "no visible injuries."  (*Id.*)  At around 5:55 p.m., defendant Tawana observed plaintiff without a safety garment, and with towels wrapped around his neck and hands.  (*Id.* at ¶ 40.)  CFMG's mental health R.N., defendant Grashika Devendra ("Devendra"), was notified of these observations at roughly 6:10 p.m., but conducted no follow-up.  (*Id.*)

Around 5:58 p.m., defendant Tawana noted that she responded to plaintiff's cell with other CFMG staff and found plaintiff lying on the floor and "bleeding from an unknown place." (*Id.* at ¶ 41.)  Plaintiff had blood on his mouth, forehead, and both hands, and was apparently using "filthy language to medical and custody staff."  (*Id.*)  County correctional officers dragged

plaintiff out of his cell by the head and neck. (*Id.*) An unidentified County shift sergeant directed that plaintiff be placed in a safety cell due to the risk of him injuring himself, but otherwise no medical action was taken at that time. (*Id.*) At 6:58 p.m., defendant Tawana conducted a "Suicide Watch" of plaintiff and observed him lying on the floor without a safety garment and with dried blood on his face and nose. (*Id.* at ¶ 42.) At 11:02 p.m., defendant Tawana checked on plaintiff and observed him lying flat on the floor. (*Id.* at ¶ 43.) Defendant Tawana scheduled a mental health evaluation for the next morning, but the evaluation was never conducted. (*Id.*)

On October 26, 2015, at about 12:40 a.m., defendant Berghorst wrote a Suicide Watch Report stating that plaintiff was "found laying" in the "prone position" and, according to County staff, had not moved since he had been placed in the safety cell. (*Id.* at ¶ 45.) Plaintiff was found lying in a pool of yellow and brown liquid around his face and upper body and provided with a safety garment, although his breathing was reportedly labored at that time. (*Id.*) An examination of his mouth and throat revealed the presence of blood. (*Id.* at ¶ 46.) At 12:49 a.m., defendant Berghorst requested that the County sergeant on duty call for an ambulance. (*Id.*) Plaintiff's statements to treating personnel at that time indicated that he did not know where he was. (*Id.*)

Medical staff arrived at around 12:59 a.m., placed plaintiff into "full spine precautions" and transported him to an emergency room. (*Id.* at ¶ 49.) Plaintiff arrived at the Doctors Medical Center hospital at 1:39 a.m., approximately 32 hours after he was first placed in the jail's "Sobering Cell." (*Id.*) After being admitted to the hospital and undergoing tests, plaintiff was found to be suffering from numerous injuries including, but were not limited to, lack of feeling or movement of his legs, a cervical spine fracture at the C5 vertebrae, a nondepressed skull fracture, and a torn rotator cuff. (*Id.* at ¶ 52.) Plaintiff remains paralyzed from the neck down. (*Id.*)

In his complaint, plaintiff presents eight causes of action. On November 20, 2017, defendants separately moved to dismiss the first, third, fourth, sixth, and seventh causes of action.[1] (Doc. No. 51.) On December 5, 2017, plaintiff filed an opposition to the motion. (Doc.

---

[1] Defendants also moved to dismiss the fifth cause of action on November 17, 2017 by separate motion. (Doc. No. 48.) Plaintiff stipulated to the dismissal of this claim on November 30, 2017. Doc. No. 53.)

4

No. 54.)  On December 12, 2017, defendants filed a reply.  (Doc. No. 56.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  However, the court need not assume the truth of legal conclusions cast in the form of factual allegations.  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  *See also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

/////

/////

/////

**DISCUSSION**

**A.     Section 1983 Claim Against Defendant Christianson**

The first cause of action of plaintiff's complaint alleges that defendants acted under color of state law to deprive plaintiff of his Eighth Amendment right to be free of cruel and unusual punishment, in violation of 42 U.S.C. § 1983.[2] To state an Eighth Amendment claim based on medical treatment in prison, an inmate must show "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "In the Ninth Circuit, the test for deliberate indifference consists of two parts." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). "First, the plaintiff must show a serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* (internal quotation marks and citations omitted). "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Id.* This second prong "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). "Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979)). Defendant Christianson seeks dismissal of this cause of action, arguing that there is no allegation in plaintiff's complaint that he personally participated in the alleged constitutional violation.

/////

---

[2] The court takes judicial notice of plaintiff's sentencing on March 25, 2015 (Doc. Nos. 51-2, 51-3) because it is a matter of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing Fed. R. Evid. 201). Because plaintiff was serving a criminal sentence at the relevant time, his claims are appropriately analyzed under the Eighth Amendment, rather than the Fourteenth Amendment. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (en banc) ("Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause.")

In this regard, the complaint alleges that defendants knew and/or had reason to know that plaintiff had been injected with a controlled substance, that he was having a reaction to that substance, had unstable and elevated vital signs, and so forth. (Compl. at ¶ 67.) It is then alleged that despite this knowledge, defendants were deliberately indifferent to plaintiff's immediate and serious medical needs. As detailed above, the complaint includes numerous factual allegations explaining how various CFMG employees knew of plaintiff's condition, as well as allegations as to how their medical response to his condition was allegedly deficient. (*See* Compl. ¶¶ 27–51.) However, none of these allegations reflect any act or omission on the part of defendant Christianson. The only allegation against defendant Christianson appears to be that plaintiff was "in the custody" of defendant Christianson, without any allegation that the two ever interacted. (*Id.* ¶ 59.) Therefore, plaintiff's allegation that defendant Christianson "knew and/or had reason to know" of plaintiff's condition is merely conclusory and insufficient. *See Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 969 (9th Cir. 2010) (dismissing a complaint because plaintiff "merely alleged in a conclusory fashion that the officers 'knew, or should have known'" of the violation); *Sullivan v. Biter*, No. 1:15-cv-00243-DAD- SAB, 2017 WL 1540256, at *1 (E.D. Cal. Apr. 28, 2017) ("Conclusory allegations that various prison officials knew or should have known about constitutional violations occurring against plaintiff simply because of their general supervisory role are insufficient to state a claim under 42 U.S.C. § 1983.").

There is no allegation in plaintiff's complaint that defendant Christianson ever observed plaintiff after he had ingested the unknown substance, nor is there any allegation that Christianson was notified of this incident by jail staff. Finding no factual allegations that could support a claim against defendant Christianson, the court will grant defendants' motion to dismiss the first cause of action against him.

**B.     Section 1983 Claims Against County and Doe Defendants**

In his second cause of action, plaintiff alleges a § 1983 claim against the County and various Doe defendants based on the First, Fourth, and Fourteenth Amendments. (Compl. at ¶ 85.) Defendants have not moved for dismissal of this claim. However, at the hearing on the

pending motion plaintiff conceded that this cause of action must be dismissed as improperly pleaded. Accordingly, plaintiff's second cause of action will be dismissed with leave to amend.

**C.     *Monell* Claim**

In the third cause of action of the complaint plaintiff alleges a § 1983 claim against defendant Stanislaus County pursuant to *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). Plaintiff also alleges a § 1983 claim against defendant Christianson on a theory of supervisory liability. The court addresses each in turn.

It is well-established that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 69; *see also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). To state a *Monell* claim against the County, plaintiff "must demonstrate that an 'official policy, custom, or pattern' on the part of [the County] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)). A *Monell* claim can be established in one of three ways. *See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014). First, a local government may be held liable when it acts "pursuant to an expressly adopted policy." *Id.* (citing *Monell*, 436 U.S. at 694); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Second, a public entity may be held liable for a "longstanding practice or custom." *Thomas*, 763 F.3d at 1170. Such circumstances may arise when, for instance, the public entity "fail[s] to implement procedural safeguards to prevent constitutional violations" or when it fails to adequately train its employees. *Tsao*, 698 F.3d at 1143 (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."); *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (requiring a plaintiff asserting a claim based on a failure to train to allege facts showing that defendants "disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights") (internal brackets omitted) (quoting *Connick*, 563 U.S. at 61). "Third, a

local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier v. County of Santa Clara*, 591 F.3d 1232, 1250 (9th Cir. 2010) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)), *overruled on other grounds by Castro*, 833 F.3d at 1070.

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified on other grounds by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001); *see also Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom."); *Cain v. City of Sacramento*, No. 2:17-CV-00848-JAM-DB, 2017 WL 4410116, at *3 (E.D. Cal. Oct. 4, 2017) (dismissing the plaintiff's *Monell* claim because it alleged only a single encounter between plaintiff and jail staff). Although "[i]t is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim," *Gonzalez v. County of Merced*, No. 1:16-cv-01682-LJO-SAB, 2017 WL 6049179, at *2 (E.D. Cal. Dec. 7, 2017), "where more than a few incidents are alleged, the determination appears to require a fully-developed factual record." *Lemus v. County of Merced*, No. 1:15-cv-00359-MCE-EPG, 2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016), *aff'd*, No. 16-16092, 2017 WL 4772557 (9th Cir. Oct. 23, 2017); *see also Becker v. Sherman*, No. 1:16-cv-0828-AWI-MJS (PC), 2017 WL 6316836, at *9 (E.D. Cal. Dec. 11, 2017) (finding that "four assaults related to [plaintiff's] housing assignment and status as a transgender inmate . . . sufficiently alleged the existence of a CDCR custom"), *findings and recommendations adopted,* 2018 WL 623617 (E.D. Cal. Jan. 30, 2018); *Bagley v. City of Sunnyvale*, No. 16-CV-02250-JSC, 2017 WL 5068567, at *5 (N.D. Cal. Nov. 3, 2017) ("Where courts have allowed *Monell* claims to proceed at the motion to dismiss stage, plaintiffs have pled multiple incidents of alleged violations.").

Here, plaintiff has alleged the existence of multiple policies or customs by the County. To take but one example, plaintiff alleges in his complaint that defendants had a policy:

9

> To fail to properly classify, house, and/or monitor inmates suffering from: negative or unpredictable reactions to the ingestion of a controlled substance, mental health crises or who are at risk of self-harm and/or who pose a danger to the their own safety, including placement on self-harm watch or suicide watch with proper suicide precautions, including failing to consider in any way the clear and obvious danger of placing inmates at risk of suicide in cells with means to injure themselves (including bunk beds, horizontal bars, clothing, and ligature materials) and without the frequent, logged observation required by law.

(Doc. No. 1 (Compl.) at ¶ 93.) Plaintiff has also provided specific factual allegations supporting the existence of this policy. As discussed in detail above, plaintiff alleges that over the course of two days, multiple County and CFMG employees failed to properly monitor his health and provide him with adequate medical treatment, despite his apparent need. Viewing the complaint as a whole, the court finds that the complaint contains a sufficient quantum of factual allegations to plausibly allege the existence of a policy or custom under *Monell*. Accordingly, defendants' motion to dismiss the *Monell* claim against the County will be denied.

**D.  Supervisory Liability Claim**

Defendants next seek dismissal of plaintiff's third cause of action brought against defendant Christianson based upon supervisory liability. Defendants argue that plaintiff's claims are insufficiently pleaded because "[n]o information is provided as to how Sheriff Christianson failed to properly supervise County subordinates, or allegedly set in motion a series of acts that he knew would result in a constitutional violation." (Doc. No. 51-1 at 23.)

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989)); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991) (noting that whether a supervisor in his individual capacity is liable for a failure to supervise "hinges upon his participation in the deprivation of constitutional rights"). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that

10

showed a reckless or callous indifference to the rights of others." *Starr*, 652 F.3d at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). If a subordinate has committed a constitutional violation, the liability of a supervisor "depends upon whether he set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) (internal quotation marks omitted) (quoting *Watkins*, 145 F.3d at 1093).

Here, the complaint alleges that defendant Christianson knew that plaintiff was a "serious risk" to himself because of plaintiff's ingesting of a controlled substance and his reaction to it. (Compl. at ¶ 67.) However, as discussed with respect to plaintiff's first cause of action, conclusory allegations that a defendant "knew or should have known" of a serious risk do not state a claim for relief. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Instead, a plaintiff must allege facts from which it can be plausibly inferred that the defendant possessed such knowledge. *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 70 n.8 (2d Cir. 2015) (holding that the plaintiff's allegations that the defendant "knew about the discriminatory practice, without any allegation as to how he knew or should have known of it is not sufficient"); *Tubbs v. Warden, Institutional Officials*, No. C 01-843 SI(PR), 2001 WL 1256569, at *1 (C.D. Cal. Oct. 15, 2001), *aff'd sub nom. Tubbs v. Kelly*, 46 Fed. App'x 493 (9th Cir. 2002) ("[Plaintiff's] conclusory allegations that prison officials knew or should have known that administrative segregation inmates were a danger to the security of the institution is not sufficient to plead the requisite mental state of actual knowledge of a risk of serious harm or injury.").

Because plaintiff's complaint is devoid of any factual allegations regarding defendant Christianson, the court will dismiss the third cause of action as to him. However, plaintiff will be granted leave to amend in that regard if he believes he is able to allege additional facts that will cure this deficiency.

**E.     Bane Act Claim**

Defendants next move to dismiss plaintiff's fourth cause of action which is brought under California's Bane Act, arguing that any such claim requires threats, intimidation, or coercion, and

that plaintiff's allegations "fail to identify how Lapachet's rights were interfered with by way of 'threats, intimidation, or coercion,' within the meaning of the Civil Code." (Doc. No. 51-1 at 24.)

The California Bane Act protects against interference "by threat, intimidation, or coercion" or an attempt to do the same "with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a). "[T]he relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct." *Dillman v. Tuolumne County*, 1:13-cv-00404-LJO-SKO, 2013 WL 1907379, at *20 (E.D. Cal. May 7, 2013); *see also Morse v. County of Merced*, No. 1:16-cv-00142-DAD-SKO, 2016 WL 4000406, at *1–2 (E.D. Cal. July 25, 2016). A cognizable Bane Act claim requires alleged conduct that is "more egregious" than "mere negligence." *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 958 (2012). As this court has noted, district courts in California have yet to reach a consensus as to whether a plaintiff bringing a Bane Act claim for deliberate indifference to serious medical needs must plead threats and coercion independent of the constitutional violation. *See Atayde*, 2016 WL 4943959, at *7–8 (*comparing M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 898–99 (N.D. Cal. 2013), *with Moreno v. L.A. Cty. Sheriff's Dep't*, No. 2:13-cv-07570-CAS(MANx), 2015 WL 4652637, at *18 (C.D. Cal. Aug. 3, 2015)). However, the undersigned has concluded that threats, coercion and intimidation are inherent in deliberate indifference claims, which "extend[ ] . . . 'far beyond [an] ordinary tort claim[ ]." *Atayde*, 2016 WL 4943959, at *8 (quoting *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 843 (2004)).

Defendant cites to the decisions in *Lewis v. City of Fairfield*, No. 2:16-cv-01053-JAM-AC, 2017 WL 633952, at *1 (E.D. Cal. Feb. 15, 2017), and *Lopez v. County of Tulare*, No. CV-F-11-1547-LJO-BAM, 2012 WL 33244 (E.D. Cal. 2012) in contending that plaintiff cannot allege a cognizable Bane Act claim here. (Doc. No. 16-1 at 5–6.) In *Lewis*, the district court concluded that a plaintiff cannot premise a Bane Act claim on a deliberate indifference theory. 2017 WL 633952, at *6. In *Lopez*, the court concluded that "[i]ncarceration coupled with deliberate indifference to medical and psychiatric needs does not constitute 'threats, intimidation, or coercion' for purposes of section 52.1." 2012 WL 33244, at *11. The undersigned has

considered these decisions but comes, as have other district courts, to the opposite conclusion and therefore reaffirms its prior holding and reasoning. Plaintiffs bringing Bane Act claims for deliberate indifference to serious medical needs must only allege prison officials "knowingly deprived [them] of a constitutional right or protection through acts that are inherently coercive and threatening," such as housing a prisoner in an inappropriate cell, failing to provide treatment plans or adequate mental health care, and failing to provide sufficient observations. *Atayde*, 2016 WL 4943959, at *8, n.1.

"Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986). The California Supreme Court has not resolved this issue, and its recent discussion of Civil Code § 52.1 suggested the statute should be read broadly. *Venegas*, 32 Cal. 4th at 842–43 (emphasis omitted) (holding § 52.1 does not require the victim to be targeted because of "an actual or perceived class or characteristic"). In addition, the Ninth Circuit recently held that Bane Act claims based on the alleged excessive use of force need not allege a "threat, intimidation or coercion" that is "transactionally independent from the constitutional violation alleged." *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). In so holding, the Ninth Circuit in *Reese* relied upon a decision by the California Court of Appeal finding that in the context of Bane Act claims based upon allegations of unlawful arrest, "there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force." *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 802 n.31 (2017), *as modified* (Nov. 17, 2017) (citing *Morse v. County of Merced*, No. 1:16–cv–00142–DAD–SKO, 2016 WL 3254034, at *12 (E.D. Cal. June 13, 2016); *Mann v. County of San Diego*, 147 F. Supp. 3d 1066, 1092 (S.D. Cal. 2015); *Simmons v. Superior Court of San Diego Cty.*, 7 Cal. App. 5th 1113, 1126 (2016)). Although *Reese* and *Cornell* did not involve Bane Act claims based upon allegations of deliberate indifference as leveled by plaintiff in this case, the logic of those decisions is fully applicable here. *See Scalia v. County of Kern*, No. 1:17-cv-01097-LJO-SKO, 2018 WL 1726616, at *12 (E.D. Cal. Apr. 10, 2018) (finding that the court's analysis in *Cornell* with respect to threats, intimidation and coercion "appl[ies] to all Bane Act claims"). The

decision in *Cornell* also cited with approval to *M.H.*, 90 F. Supp. 3d at 898–99, where the district court held that a prisoner who alleges deliberate indifference to serious medical need not allege threats, coercion, and intimidation independent of that deliberate indifference to state a Bane Act claim. *See Cornell*, 17 Cal. App. 5th at 802 n.31. The undersigned finds these authorities to be persuasive in the context of this case.

However, as defendants point out, plaintiff's claims against defendant Christianson must still be dismissed if plaintiff has not alleged sufficient facts. (*See* Doc. No. 56 at 7.) As discussed above with respect to plaintiff's § 1983 claims, his complaint includes no factual allegations against defendant Christianson. The court will therefore dismiss the Bane Act claim against defendant Christianson for failure to state a claim.

Defendants advance an alternative argument as to why dismissal of plaintiff's Bane Act claim against the County is appropriate. In this regard, defendants rely on California Government Code § 844.6, which states that "a public entity is not liable for . . . [a]n injury to any prisoner." Cal. Gov't Code § 844.6(a)(2); *see also Towery v. State*, 14 Cal. App. 5th 226, 236 (2017) (finding that the Bane Act does not create an exception to statutory immunity under § 844.6). Under this provision, defendants argue that the County is immune from plaintiff's Bane Act claim.

In response, plaintiff cites California Government Code § 815.2, which provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal Gov't Code § 815.2(a). Plaintiff argues that his complaint contains sufficient allegations against defendant Christianson so as to impose liability on the County. This argument is unavailing because, as already discussed above, plaintiff's complaint contains no factual allegations against defendant Christianson.[3] There is therefore nothing in the complaint that plausibly alleges that defendant Christianson's acts or omissions "proximately caused" plaintiff's

---

[3] Defendant Christianson is the only named defendant in this action who is also a County employee.

14

injury. *Id.* Since § 815.2 does not provide an exception to § 844.6 on the facts alleged in plaintiff's complaint, the court will grant defendants' motion to dismiss the Bane Act claim as to the County.

**F.      Claim Under California Government Code § 845.6**

Defendants next move to dismiss the sixth cause of action of the complaint, which alleges a violation of California Government Code § 845.6. To state a claim for relief under § 845.6, a prisoner must allege facts establishing three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care. *Jett*, 439 F.3d at 1099 (citing Cal. Gov't Code § 845.6). "Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care." *Id.* Defendants argue that the monitoring of plaintiff once he was placed in the jail's Sobering Cell constituted the summoning of medical care, thereby preventing liability under § 845.6.

Under California law, "once an inmate is receiving medical care, § 845.6 does not create a duty to provide adequate or appropriate care." *Resendiz v. County of Monterey*, No. 14-CV-05495-LHK, 2015 WL 7075694, at *8 (N.D. Cal. Nov. 13, 2015) (citing *Watson v. State*, 21 Cal. App. 4th 836, 841–43 (1993)). Liability under § 845.6 attaches only when an employee fails to *summon* medical care; the failure to provide further treatment, or to ensure further diagnosis or treatment, is not actionable under § 845.6. *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1072 (2013). "Thus, once a prisoner is receiving medical care, prison employees are under no further obligation under § 845.6." *Pajas v. County of Monterey*, No. 16-CV-00945-LHK, 2016 WL 3648686, at *12 (N.D. Cal. July 8, 2016); *see also Castaneda*, 212 Cal. App. 4th at 1070 ("Section 845.6 is very narrowly written to authorize a cause of action against a public entity for its employees' failure to summon immediate medical care only, not for certain employee's malpractice in providing that care.").

Here, the complaint alleges that on October 24, 2015, less than an hour after being placed in the Sobering Cell, defendant King went to plaintiff's Sobering Cell in response to a call of possible drug use. (Compl. at ¶ 29.) Plaintiff was then treated by defendants King and Antonio, both medical professionals. (*Id.*) Plaintiff's vital signs were checked, and he was placed on

15

"drug withdrawal monitoring." (*Id.*) The court finds that based on these allegations of the complaint, public employees were "summoned" to treat plaintiff within the meaning of § 845.6.

Plaintiff argues that despite this monitoring, his claim under § 845.6 should not be dismissed because plaintiff "was neither transported to an inpatient medical or psychiatric care facility, nor placed in a proper safety cell on suicide." (Doc. No. 54 at 32–33.) These arguments go merely to the adequacy of the medical response, and California law is clear that inadequate medical treatment does not provide the basis for asserting a claim under § 845.6 as long as medical treatment was in fact provided. Because the complaint alleges that medical care was summoned to treat plaintiff soon after he was placed in the jail's Sobering Cell, the court will grant defendants' motion to dismiss plaintiff's sixth cause of action with leave to amend.

**G.     Negligence Claim**

Finally, defendants move for dismissal of plaintiff's negligence cause of action brought against defendants County and Christianson. The County argues it is immune from all negligence actions, and that the complaint fails to state claim against defendant Christianson. The court addresses each argument in turn.

1.     <u>Defendant County</u>

The County argues that it is "*expressly* immune for any tort injury to prisoners under Gov. Code § 844.6." (Doc. No. 51-1 at 31.) That provision states that "notwithstanding any other provision of this part . . . a public entity is not liable for . . . [a]n injury to any prisoner." Cal. Gov't Code § 844.6(a)(2).[4]

At oral argument, plaintiff's counsel conceded that § 844.6 barred all state law claims against the County except for those claims based on a failure to summon medical care under § 845.6. As discussed above, reliance on § 845.6 is unavailing because, on the facts alleged, medical care was in fact summoned. The court will therefore dismiss plaintiff's negligence claim against the County.

---

[4] That statute also recognizes multiple exceptions to that immunity, such as Government Code §§ 814, 814.2, 845.4, and 845.6. *See, e.g., Matysik v. County of Santa Clara*, No. 16-CV-06223-LHK, 2018 WL 732724, at *15 (N.D. Cal. Feb. 6, 2018).

2.      Defendant Christianson

The court turns next to plaintiff's negligence claim brought against defendant Christianson. In California, the elements of a cause of action for negligence are: (1) a legal duty to use reasonable care; (2) breach of that duty; and (3) proximate cause between the breach and (4) the plaintiff's injury. *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998) (citation omitted).

Here, plaintiff's complaint does not allege any facts suggesting that defendant Christianson took any action with respect to plaintiff. There is nothing from which the court could plausibly infer that defendant Christianson was aware of plaintiff, let alone that he was aware of plaintiff's need for medical attention and failed to respond appropriately to it. Therefore, the court is unable to discern what actions defendant Christianson allegedly took or failed to take that constituted a breach of any duty owed to plaintiff. Plaintiff's negligence claim against defendant Christianson must therefore be dismissed as well.

**CONCLUSION**

For all of the reasons set forth above:

1. Defendants' motion to dismiss (Doc. No. 51) is granted in part and denied in part;
2. Plaintiff's first, third, fourth, and seventh causes of action are dismissed as to defendant Christianson, plaintiff's second and sixth causes of action are dismissed in their entirety, and plaintiff's fourth cause of action is dismissed with respect to defendant Stanislaus County.
3. Each of these causes of action is dismissed with leave to amend and if plaintiff elects to file an amended complaint in an attempt to cure the noted deficiencies, he shall file and serve has amended complaint within twenty-eight days of the date of this order; and

/////
/////
/////
/////

17

4. The Clerk of Court is directed to correct the docket to reflect that the "County of Stanislaus" is a defendant in this case rather than the "County of Alpine."

IT IS SO ORDERED.

Dated: **June 1, 2018**

UNITED STATES DISTRICT JUDGE

18